UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CIV-61306-RAR

JEAN EMMANUEL PIERRE-LOUIS,
individually, *et al.,*

        Plaintiffs,

v.

SP PLUS CORPORATION, a Delaware
corporation, BAGGAGE AIRLINE
GUEST SERVICES, INC., a Florida
corporation doing business as BAGS,
and ALVARO SILVA, individually,

        Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendants Baggage Airlines Guest Services, Inc. ("BAGS") and Alvaro Silva's ("Silva") (collectively, "Defendants")[1] Motion for Summary Judgment ("Defendants' Motion") [ECF No. 79] and Plaintiffs Jean Emmanuel Pierre-Louis, Assade Vedrine, Jean Claude Dorelus, Wilfrid Saint Louis, and Willy Saintil's (collectively, "Plaintiffs")[2] Motion for Partial Summary Judgment ("Plaintiffs' Motion") [ECF No. 88].  Having reviewed the parties' submissions, the record, and being otherwise advised in the premises, it is

**ORDERED AND ADJUDGED** that Defendants' Motion is **GRANTED IN PART** and Plaintiffs' Motion is **DENIED** as set forth herein.

---

[1] All claims against Defendant SP Plus Corporation were dismissed pursuant to the parties' Joint Stipulation of Dismissal Against Defendant, SP Plus Corporation Only [ECF No. 59].

[2] According to Plaintiffs' Motion, "Plaintiff Eriles Maxean has advised Defendants that he intends to withdraw his FLSA claim for unpaid overtime compensation and does not join in [the] motion." *See* Pls. Mot. at 1 n. 1.  However, as of the date of this Order, the docket does not reflect that Plaintiff Maxean has withdrawn any of his claim(s).

## BACKGROUND

Plaintiffs were each employed by Defendant BAGS as wheelchair agents at the Fort Lauderdale-Hollywood International Airport.  *See* Defendants' Statement of Material Facts ("Defs. SOMF") [ECF No. 80] ¶ 1-4; Plaintiffs' Statement of Material Facts ("Pls. SOMF") [ECF No. 89] ¶ 1-4.  Defendant Silva was the Manager for BAGS at the Airport.  Pls. SOMF ¶ 7.  As the Manager, Silva was tasked with hiring, payroll, customer service, and operations, including reviewing and approving the employee time records.  Pls. SOMF ¶¶ 9-11.  Silva reported to Gregory D'Amron ("D'Amron"), the BAGS Regional Director for the Southeast.  Pls. SOMF ¶ 23.  BAGS hired Plaintiff Dorelus in 2010, Plaintiffs Hilaire, Maxean, Saint Louis, Saintil, and Vedrine in 2011, and Plaintiff Pierre-Louis in 2014.  At the time of their hiring, Plaintiffs Pierre-Louis, Maxean, Dorelus, Hilaire, Vedrine and Saint Louis each signed an Employee Handbook, acknowledging that they were at-will employees; Plaintiff Saintil wrote his name on an Employee Handbook, stating the same.  Defs. SOMF ¶¶ 9-10.

During their employment all Plaintiffs, except Hilaire, were compensated at an hourly rate of $13.38 in 2016; $13.59 in 2017; $13.98 in 2018; and $14.90 in 2019.  Defs. SOMF ¶ 16; Plaintiffs' Response to Defendants' Statement of Material Facts ("Pls. Resp. SOMF") [ECF No. 112] ¶ 16.  Initially, to track their hours, employees recorded their time on a computer using their employee ID. Defs. SOMF ¶ 22.  But in December 26, 2016, Defendants began using an electronic system— provided by non-party Ceridian—that required employees to log their time with a unique employee identification number and with their fingerprint.  Defs. SOMF ¶¶ 22-24; Pls. SOMF ¶ 47.    Plaintiffs allege—but Defendants dispute—that in addition to this electronic system, Defendants had a back-up, paper time-keeping system that was used to record their time.  Pls. Resp. SOMF ¶¶ 22-24; Pls. SOMF ¶64; Defendants' Response to Plaintiffs' Statement of Material

Facts ("Defs. Resp. SOMF") [ECF No. 108] ¶¶ 61-63.  BAGS employed all Plaintiffs until May 2019, except for Plaintiff Saintil who was employed until August 2018.  Defs. SOMF ¶¶ 6-8.

On May 23, 2019, Plaintiffs Pierre-Louis and Hilaire filed a one-count Complaint, alleging a violation of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA").  On September 13, 2019, Plaintiffs filed an Amended Complaint [ECF No. 48], alleging unpaid overtime under the FLSA (Count I), breach of contract (Count II), and violations of the Broward County Living Wage Ordinance (Count III).  On January 10, 2020, the parties filed cross-motions for summary judgment, which became ripe for disposition on February 7, 2020. Defendants' Motion seeks summary judgment on all counts, while Plaintiffs' Motion requests summary judgment only as to Defendants' liability on Count I and on Defendants' Third, Fourth, Fifth, and Sixth Affirmative Defenses.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation

marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party

has shouldered its initial burden, the burden shifts to the non-moving party to "'set forth specific

facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or

denials of the adverse party's pleading.'" *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir.

2001) (quoting *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)).

The standard of review for cross-motions for summary judgment does not differ from the

standard applied when only one-party files a motion. *See Am. Bankers Ins. Grp. v. United States*,

408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in

themselves, warrant the court in granting summary judgment unless one of the parties is entitled

to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*,

744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotations and citations omitted). Thus, a court

must consider each motion on its own merits, resolving all reasonable inferences against the party

whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

## ANALYSIS

### I.  Unpaid Overtime Violation Under FLSA (Count I)

Under the FLSA, an employee who works for more than forty hours a week is entitled to

overtime compensation equal to one and a half times his regular rate of pay. *See* 29 U.S.C. § 207.

To succeed on a claim for unpaid overtime, a plaintiff must demonstrate that (1) she or he worked

overtime without compensation and (2) that the employer knew or should have known of the

overtime work. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314-15 (11th Cir.

2007). Moreover, an employer is required to keep records of wages and hours worked. 29 U.S.C.

§ 211(c). The records must include the "[h]ours worked each workday and total hours worked

each workweek." 29 C.F.R. § 516.2(a)(7).  In situations where an employer has failed to keep adequate records of the numbers of hours worked, the Court must utilize the burden-shifting framework set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) to evaluate a plaintiff's claims.

Under this paradigm, an employee must initially show the statute is violated and then demonstrate the extent of his work as a matter of "just and reasonable inference."  *Id.* at 687.  In *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013), the Eleventh Circuit addressed the manner in which courts are to apply *Anderson*.  There, the Court stated:

> The FLSA places upon the employee-plaintiff "the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946).  However, if the employer failed to keep time records, as in this case, that burden is relaxed.  **Specifically, in that circumstance an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.**  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.  *Id.* at 687–88.

*Lamonica*, 711 F.3d at 1315 (emphasis added).

## A.  Accuracy of Defendants' Records

Plaintiffs contend that because Defendants kept inaccurate records, the Court must employ the *Anderson* framework to analyze Plaintiffs' FLSA claims.  Defendants resist the application of *Anderson* in their Response to Plaintiffs' Motion for Summary Judgment by suggesting Plaintiffs cannot prove the unreliability of Defendants' timekeeping records—but seemingly presume the applicability of *Anderson* in their earlier-filed Motion for Summary Judgment.  Having reviewed the record evidence, the Court finds that no question of fact exists as to Defendants' failure to keep reliable records.

To begin, Defendants concede there was a period of time in which their tracking software automatically deducted a thirty-minute break for employees, even when the employees did not clock out for a break. Defs. Resp. SOMF ¶ 55. This alone calls into question the accuracy and reliability of the records produced by Defendants. But there is more. Defendants admit that at least with respect to Plaintiff Hillaire they cannot provide a complete Meal Break Report for unexplained reasons. Defs. Resp. SOMF ¶ 57. And, more importantly, Defendants have advanced no evidence to dispute the text messages between Silva and his supervisor, D'Amron, wherein D'Amron chastises Silva for inaccurately deducting time for meal breaks from employees' timesheets. *See* Text Messages Between Silva and D'Amron [ECF No. 89-38]; *see also* Gregory D'Amron Dep. [ECF No. 89-1] at 294:6-300:20. Indeed, at his deposition Silva testified that he arbitrarily chose at what time interval he would deduct Plaintiff Pierre-Louis's meal breaks. *See* Alvaro Silva Dep. [ECF No. 89-2] at 121:11-19.

Defendants' response to Plaintiffs' evidence revealing the unreliability of their time records is, to put it mildly, anemic. Rather than demonstrate how or why their records are reliable and should be trusted, Defendants primarily argue that their records are accurate because Plaintiffs' expert relied on them and noted that they included the hours and rates paid to Plaintiffs. However, the fact that Plaintiffs' expert used the records provided by Defendants to extrapolate his analysis says nothing about the accuracy of the underlying records. Moreover, Defendants do not dispute the assertion that weekly hourly rates are not included in their records, nor do they advance any evidence to dispute D'Amron's text exchange with Silva.

With respect to Silva's testimony, Defendants do not dispute that Silva clocked Plaintiffs out for breaks at certain times, but argue that he did so only at Plaintiffs' request. Moreover, Defendants note the Ceridian records show that Plaintiffs clocked themselves out a majority of the time. However, even accepting Defendants' arguments as true, this premise does not address

Plaintiffs' contention that Silva arbitrarily picked the *times* reflected on Plaintiffs' records. This undisputed fact calls into question the overall reliability of Defendants' records. Finally, Defendants cite no evidence to offset Plaintiffs' contention that the records produced by Defendants failed to account for Plaintiffs' total number of hours worked in a single week—as required by the FLSA—and the Court will not scour through the approximately 8,600 pages of exhibits submitted by Defendants to disprove the same.[3]

In sum, the Court finds that no reasonable trier of fact could find that Defendants maintained accurate time records. The evidence shows that overtime hours may not have been consistently or accurately tracked by Defendants. Accordingly, the Court proceeds to perform the *Anderson* analysis.

### B. *Anderson* **Analysis**

Where a defendant's records cannot be trusted, an "employee carries its burden of proving that he or she performed work without proper compensation if he or she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316. Here, Defendants argue that Plaintiffs cannot establish the amount of overtime they worked as a matter of just and reasonable inference because Plaintiffs have repeatedly changed their testimony regarding the number of uncompensated hours they worked. Defendants cite to inconsistencies between each Plaintiffs' interrogatory responses and/or their deposition testimony. *See* Defs. SOMF ¶¶ 30-72. In addition, Defendants point to records that

---

[3] Defendants seem to be operating under the mistaken assumption that this Court is able, without guidance from the parties, to trudge through thousands of pages of paperwork in an effort to ascertain their evidentiary value. This faulty assumption weighs heavily on Defendants because they bear the burden of proving that they kept accurate records. Defendants have not identified, and the Court cannot unearth, any employment records that, when taken alone or in concert, can be construed as accurate, much less precise. *See Olson v. Superior Pontiac-GMC, Inc.*, 776 F.2d 265, 266 (11th Cir. 1985) (noting an employer has the burden to prove the "precise" amount of work performed and wages paid for those hours each work week).

suggest both that Plaintiffs routinely clocked themselves out for meal breaks [ECF No. 86-28], and that Plaintiffs had ample time to take meal breaks. Specifically, Defendants highlight data from the Bureau of Transportation Statistics showing the number of flights arriving and departing on the dates in question [ECF No. 84], as well as specific records relating to Plaintiff Pierre-Louis [ECF No. 86-21-24]. Defendants suggest that Plaintiffs' inconsistencies, coupled with these records, demonstrate that Plaintiffs' allegations are patently false, and thus no issue of fact exists for a jury. In doing so, Defendants cite to a number of cases in which courts have dismissed claims where plaintiffs offered contradictory testimony regarding the amount and extent of the alleged uncompensated work.

Plaintiffs, on the other hand, contend that any discrepancies in their testimony regarding the number of hours worked and compensated cannot form a basis to grant Defendants' Motion. Plaintiffs acknowledge these inconsistencies but argue that their initial estimates were disclosed before Defendants had produced any time records. Once Defendants produced time and payroll records, however flawed, Plaintiffs used these records to refresh their recollection and re-evaluate their estimates. More importantly, Plaintiffs contend that they have produced sufficient evidence to demonstrate the amount of work performed for which they were improperly compensated and to prove the reasonableness of the inference to be drawn from their evidence of unpaid overtime compensation. Plaintiffs request that the Court grant partial summary judgment in their favor on the issue of liability under the FLSA, but allow the question of damages to go to a jury given the factual disputes regarding the amount of overtime worked.

The Court finds that issues of fact permeate this case. The parties dispute how many hours each Plaintiff worked, how many breaks each Plaintiff took, how long each break lasted, whether Defendants interrupted Plaintiffs' breaks but failed to compensate them for the residual time, and more. In fact, the parties do not even agree on what system Plaintiffs used to document their time

and whether a back-up system was regularly employed.  In sum, nothing about this case makes Plaintiffs' FLSA claim well-suited for summary judgment.

With respect to Defendants' argument that Plaintiffs have offered inconsistent testimony that cannot form the basis of Defendants' liability, the Court finds that such inconsistencies do not constitute the kind of naked assertions that courts have found to warrant the entry of summary judgment.  Here, as Plaintiffs have explained in their papers, inconsistencies are due to estimates provided by Plaintiffs before Defendants had produced their records.  Moreover, "although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, the remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee."  *Allen*, 495 F.3d at 1315 (internal quotations and citations omitted).  In this case, Plaintiffs testified that Defendants maintained a practice of requiring employees to work unrecorded hours and that employees were precluded from accurately recording their break time.  *See* Jean Emmanuel Pierre-Louis Dep. [ECF No. 89-18] at 218:13-18; Jean Claude Dorelus Dep. [ECF No. 89-25] at 66:11-17; Assade Verdine Dep. [ECF No. 89-30] at 80:14-81:1; Wilfrid Saint Louis [ECF No. 89-28] at 102:1-11, 124:3-12; Evens Hilaire Dep. [ECF No. 89-26] at 81:3-22; Willy Saintil Dep. [ECF No. 89-29] at 66:22-67:10; Eriles Maxean Dep. [ECF No. 89-27] at 63:1-11.

Moreover, in their amended interrogatories, Plaintiffs made statements regarding the amount and extent of their uncompensated work.  *See* Amended Answer to Interrogatory Number 2 [ECF Nos. 89-10 to 89-16].  To the extent there are inconsistencies between different versions of Plaintiffs' statements, these kinds of inconsistencies should be tested through cross-examination at trial so that a jury may weigh the credibility of each Plaintiff's testimony in support of his claims.

*Id.* at 317.[4]  It is not lost on the Court that Plaintiffs' inability to provide precise estimates of hours worked may be partly the result of Defendants' failure to keep adequate records.

In sum, Plaintiffs' inability to state with precision the number of uncompensated hours worked does not entitle Defendants to summary judgment, and the Court finds that Plaintiffs have produced "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687; *accord Allen*, 495 F.3d at 1317-18.  Further, given the aforementioned issues of fact, summary judgment for Plaintiffs is also unwarranted.  As such, summary judgment is denied for either party on Count I of the Amended Complaint.

## II.  Breach of Contract (Count II)

In their Amended Complaint, Plaintiffs argue that Defendants "agreed to pay Plaintiff [*sic*] for all hours worked and such an agreement formed a contract between the parties."  Amended Comp. ¶ 47.  Plaintiffs contend that Defendants breached said contract by failing to pay Plaintiffs for all hours worked.  Defendants maintain that Plaintiffs were at-will employees and as such they did not have a contract with Plaintiffs.

To establish a claim for breach of contract under Florida law, a plaintiff must prove: (1) the existence of a contract; (2) a breach of that contract; (3) causation; and (4) damages.  *See Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills, LLC*, 112 F. Supp. 3d 1330, 1334 (S.D. Fla. 2015).  Here, Defendants contend—and Plaintiffs agree—that no express written contract exists between the parties and that all Plaintiffs were at-will employees with BAGS.  Indeed, all Plaintiffs signed or acknowledged a BAGS handbook form that specifically provided the following:

---

[4]  The Court assumes that Plaintiffs' misquotation of *Allen* in their Response to Defendants' Motion for Summary Judgment is a scrivener's error, rather than an attempt to mislead this Court.  *See* Response to Defs. Mot. at 16.  Nonetheless, the parties are cautioned to closely review the work submitted to this Court, especially as it relates to any citations.

> I understand and agree that, other than the president of the Company, no manager, supervisor or representative of the Company has any authority to enter into any agreement for employment other than at-will; only the president of the Company has the authority to make any such agreement and then only in writing signed by the president of the company.

Defs. SOMF ¶¶ 9-10.

In addition, Plaintiffs concede that none of them had an agreement signed by the President of BAGS.  Defs. SOMF ¶ 11; Pls. SOMF ¶ 11.  In light of these admissions, Plaintiffs argue that they had an implied-in-fact contract.  But beyond reiterating Defendants record citations—all of which highlight the lack of a defined contract with terms and mutual assent—Plaintiffs make no effort to demonstrate that they in fact entered into a contract with Defendants. Nor could they given that the President of BAGS is the only party authorized to enter into an employment contract with Plaintiffs and all Plaintiffs acknowledge that they did not have a contract with the President.

Put simply, Plaintiffs cite to no evidence in the record that would support a breach of contract claim and the Court sees no reading of the facts that would support the same.  Accordingly, summary judgment in favor of Defendants is warranted on Count II.

### III.   Violations of the Broward County Living Wage Ordinance (Count III)

Plaintiffs also allege that Defendants violated the Broward County Living Wage Ordinance, which requires that employers pay employees a living wage, as defined by the Broward County Code.  Broward Cty. Fla. Code §§ 26-102(a)(1)-(1)(2).  The Broward Ordinance provides different living wage obligations for employers who provide health care benefits and those that do not.  Defendants argue that BAGS complied with the Broward Ordinance by paying the mandated living wage for employees who receive health care benefits.  Plaintiffs do not dispute that Defendants have paid Plaintiffs the lower rate.  Instead, Plaintiffs contend that in order to qualify for the lower rate, Defendants must provide the County with a notarized affidavit of compliance

or with written proof that an employee has declined health care benefits.  *See* Pls. Response to Defs. Motion at 25.  Because Defendants have not come forward with this proof, Plaintiffs contend that Defendants have violated the Broward Ordinance.

Plaintiffs misunderstand the burden of persuasion. As the party bringing this lawsuit, Plaintiffs bear the burden of demonstrating that a reasonable jury could find Defendants violated the Broward Ordinance at issue.  Even at a summary judgment posture, taking all reasonable inferences in Plaintiffs' favor, there is no evidence in the record to create a triable issue of fact on this count.  There is simply no evidence to suggest the higher living wage rates apply in this case, or that Defendants have failed to comply with the notice provisions of the Ordinance.  Accordingly, summary judgment in favor of Defendants is warranted on Count III.

## IV.  Affirmative Defenses

Plaintiffs argue that they are entitled to summary judgment on Defendants' Fifth and Sixth Affirmative Defenses, which allege Plaintiffs' claims may be barred by the applicable statute of limitations (Fifth) and that any violation of the FLSA was not willful or in reckless disregard of the requirements of the FLSA, thereby triggering the two-year statute of limitations (Sixth).   In addition, Plaintiffs contend that if they succeed in establishing willful disregard as a matter of law, then the Court should also grant summary judgment in favor of the Plaintiffs on Defendants' Third and Fourth Affirmative Defenses, which allege Defendants acted in good faith.

"The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added to it. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008) (citing 29 U.S.C. § 255(a)).  To establish a willful violation, "the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Id.*

Plaintiffs contend that the text messages between Silva and D'Amron prove that Defendants willfully violated the FLSA.  Defendants argue that Silva and D'Amron testified that they only added in meal breaks when Plaintiffs actually took their meals, and suggest that other evidence in the record disproves Plaintiffs' contention that Silva arbitrarily added meal breaks.  On this record, whether Defendants willfully violated the FLSA is an issue of fact that must be resolved by the jury.  Accordingly, the Court will deny summary judgment as to Defendants' Affirmative Defenses.[5]

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

(1) Defendants' Motion for Summary Judgment [ECF No. 79] is **GRANTED IN PART**. Summary judgment is **GRANTED** in favor of Defendants as to Counts II and III of Plaintiffs' Amended Complaint and **DENIED** as to Count I.

(2)  Final Judgment as to Counts II and III will be entered by separate order.

(3)  Plaintiffs' Motion for Partial Summary Judgment [ECF No. 88] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of February, 2020.

_____

**RODOLFO RUIZ**
**UNITED STATES DISTRICT JUDGE**

---

[5]  The Court does not reach the issue of "tip credit," which was not raised as an affirmative defense and is subject to a separate motion *in limine*.  *See* Plaintiffs' Motion *in Limine* to Exclude Evidence or Argument Based on a Tip Credit and Hearsay Records [ECF No. 93].