UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:19-cv-61306-RAR/Becerra

JEAN EMMANUEL PIERRE-LOUIS, *et al.*,

      Plaintiffs,

v.

BAGGAGE AIRLINE GUEST SERVICES,
INC., *et al.*,

      Defendants.

_____/

### OMNIBUS REPORT AND RECOMMENDATION[1] ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS AND DEFENDANTS' MOTION FOR SANCTIONS

**THIS CAUSE** came before the Court on Plaintiffs, Jean Emmanuel Pierre-Louis ("Pierre-Louis"), Evens Hilaire ("Hilaire"), Assade Vedrine ("Vedrine"), Jean Claude Dorelus ("Dorelus"), Wilfrid Saint Louis ("Saint Louis"), Eriles Maxean ("Maxean"), and Willy Saintil's ("Santil") (collectively "Plaintiffs"), Motion for Attorneys' Fees and Non-Taxable Costs ("Motion for Attorneys' Fees"), ECF No. [267].  Defendants, Baggage Airline Guest Services, Inc. ("BAGS") and Alvaro Silva ("Silva") (collectively "Defendants"), filed their Response in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs (the "Opposition"), ECF No. [272], and Plaintiffs filed their Reply, ECF No. [279].  The Parties also appeared before the undersigned for oral argument on Plaintiffs' Motion for Attorneys' Fees and Costs.  ECF No. [289].  Additionally, Defendants filed their Motion for Sanctions for Unreasonably and Vexatiously Multiplying Proceedings Against

---

[1] The instant motions were referred to the undersigned by the Honorable Rodolfo A. Ruiz, United States District Judge, to take all action as required by law.  ECF Nos. [268], [299].

Plaintiffs' Counsel the Alderman Law Firm, Jason Alderman, and Kristy Johnson ("Plaintiffs' counsel"), ECF No. [284]. Plaintiffs' counsel filed their Response in Opposition to Defendants' Motion for Sanctions, ECF No [302], and Defendants filed their Reply, ECF No. [305].

After due consideration of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is **RECOMMENDED** that Plaintiffs' Motion for Attorneys' Fees and Costs be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned recommends that Plaintiffs be awarded a total of $140,683.08 in attorneys' fees, and that their request for non-taxable costs be denied in its entirety. The undersigned further recommends that Plaintiffs' request that sanctions be imposed against Defendants be **DENIED**. Finally, the undersigned recommends that Defendants' Motion for Sanctions be **DENIED**.

## I.    BACKGROUND

### A.  The Underlying Case Of Action

Neither the facts nor the claims at issue in this case were complicated. On May 23, 2019, Plaintiffs Pierre-Louis and Hilaire filed suit against Defendants SP Plus Corporation ("SP Plus") and BAGS, asserting one count for overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"). ECF No. [1]. Specifically, Plaintiffs Pierre-Louis and Hilaire alleged that during the time they were employed by Defendants as wheelchair attendants, they were not paid overtime for time worked in excess of forty hours per week. *Id.* ¶¶ 12, 16. Plaintiffs further alleged that although they were not allowed to take meal breaks, Defendants automatically deducted a thirty-minute meal break for every shift worked. *Id.* ¶ 18.

On September 13, 2019, Plaintiffs filed an Amended Complaint. ECF No. [48]. The Amended Complaint added five additional Plaintiffs (Vedrine, Dorelus, Saint Louis, Maxean, and Santil), and added Silva as a Defendant. *Id.* at 1. In the Amended Complaint, Plaintiffs asserted one

count for overtime violations under the FLSA (Count I), one count for breach of contract for recovery of unpaid wages under Florida law (Count II), and one count for violation of the Broward County Living Wage Ordinance (the "BCLWO") (Count III). *Id.* at 6–11.

As to the FLSA claim (Count I), Plaintiffs again alleged that they were not paid overtime for the time worked in excess of forty hours per week. *Id.* ¶ 20. Additionally, Plaintiffs alleged that Defendants improperly deducted thirty minutes per shift for meal breaks they never took. *Id.* ¶ 22. As to the state law breach of contract claim (Count II), Plaintiffs alleged that Defendants breached the employment agreement between them by failing to properly compensate Plaintiffs for all the hours worked. *Id.* ¶¶ 47–48. As to the BCLWO claim (Count III), Plaintiffs alleged that Defendants failed to pay them at an hourly rate ranging between $12.63 and $14.90, as required by Section 26.104(c), Broward County Code. *Id.* ¶¶ 21, 57–58, 61.[2]

### 1. Discovery

The discovery in this case *should* have been relatively simple. However, it was not. Instead, discovery spanned nearly eight months, included eighteen depositions, and seven discovery hearings, at least six of which were before the undersigned. Indeed, a cursory review of the record makes the Parties' exceedingly litigious approach clear.

Most of the discovery issues before the undersigned related to Defendants' failure to provide complete discovery responses. For example, one of the issues before the Court was Defendants' late production of a text message between Defendant Silva and his supervisor, Greg D'Amron, wherein Defendant Silva was admonished by his supervisor for improperly deducting meal breaks. ECF No.

---

[2] On October 24, 2019, the parties filed a Joint Stipulation of Dismissal of Claims Against Defendant, SP Plus Corporation Only. ECF No. [57]. Therein, the parties "stipulate[d] to the dismissal of all claims asserted against Defendant, SP Plus, in the Amended Complaint." *Id.* at 1. As a result, the only remaining Defendants were BAGS and Silva.

[139] at 1–2.  To be sure, the evidence was highly relevant and should have been discovered and produced to Plaintiffs well before depositions were taken.  The Court ultimately concluded that given the untimely production of the text message and the necessity for a second deposition of Defendant Silva, Defendants were responsible for the costs associated with the second deposition pursuant to the fee shifting provisions of Rule 37.  *Id.* at 2.  Despite the fact that the cost at issue were fairly small, the Parties' failed to agree to what amount should be paid necessitating another hearing for the Court to conclude that Plaintiffs were entitled to recover $1,800.00, the full amount sought in costs for the second deposition of Defendant Silva.  ECF No. [145].

The Court also had to consider Defendants' late production of Plaintiff Hilarie's break reports and certain raw punch data.  *Id.* at 23.  Again, the Court found that Plaintiffs were prejudiced by the late production, which included information Plaintiffs were clearly entitled to and for which no reasonable explanation as to why there had been such a delay was readily apparent.  ECF No. [165] at 2–3.  Because the Court found that Defendants should have produced the records in the first instance, it concluded that Plaintiffs were entitled to their reasonable attorneys' fees and costs incurred in connection with compelling Plaintiff Hilaire's payroll records and having to take the deposition of a Ceridian payroll expert in Canada.  ECF No. [213] at 5–6.[3]   Again, the Parties' inability to meaningfully confer on the most basic of issues, the meaning of the time records produced, led to discovery hearings and the need to depose a witness in Canada.  From the vantage point of the undersigned, it was evident that the Parties were prepared to litigate every point on every issue; to determine which party is more at fault is a wasted effort, as it was clear from the Court's various hearings, that neither side was particularly interested in any kind of meaningful cooperation.

---

[3] Although the Court concluded that Plaintiff was entitled to fees and costs, the amount was never determined by the Court because the parties settled before the Court entered its Order.

## 2.   Settlement Offers Before Summary Judgment

The first settlement conference, a court ordered conference soon after the case was filed, was before the Honorable Magistrate Judge Barry Seltzer.  ECF No. [32].  At that juncture, Plaintiffs had not yet amended their Complaint; therefore, the Statement of Claim filed in anticipation of that conference only accounted for Plaintiffs Pierre-Louis and Hilaire.  *Id.*  In that Statement of Claim, Plaintiffs estimated that their FLSA damages amounted to $36,111.00.  *Id.* at 2–3.  The parties failed to reach a settlement.  ECF No. [33].

Thereafter, on September 9, 2019, the parties appeared for private mediation.  ECF No. [46].  At that time, Plaintiffs' estimated damages appeared to remain unchanged.  ECF No. [267-2] at 134.  No agreement was reached at the private mediation.  ECF No. [46].

On September 26, 2019, after the Amended Complaint was filed, Plaintiffs filed their Amended Statement of Claim alleging $131,176.20 in estimated FLSA damages.  ECF No. [52].

On December 13, 2019, after Defendants produced a text message thread between Defendant Silva and his supervisor wherein his supervisor admonishes him for improperly deducting meal breaks, Plaintiffs' counsel tendered a $207,959.25 settlement offer ($53,959.25 in unpaid wages for all seven Plaintiffs and $154,000.00 in attorneys' fees and costs).  ECF No. [267-2] at 147–48.  The record indicates that, at that point, Plaintiffs' attorneys had billed $197,595.00 for 418.60 hours of billable time.  *Id.* at 175.  Defendants did not accept the settlement offer, no counteroffer was made, and the parties proceeded to file their respective summary judgment motions.  *Id.* at 12.

## 3.   Motions For Summary Judgment

On January 10, 2020, the parties filed competing summary judgment motions.  ECF Nos. [79], [88].  Defendants' summary judgment filings consisted of a 25-page summary judgment motion, a 16-page statement of undisputed material facts, and 45 exhibits spanning 6,229 pages.  *See*

ECF Nos. [79], [80], [81], [82], [86].  Defendants requested summary judgment on all counts, arguing that they were entitled to summary judgment on the FLSA and unpaid wages claims (Counts I and II) because the "undisputed record shows that BAGS maintained time records showing the number of hours Plaintiffs worked in each workweek and paid them the amounts due as reflected in those time records, including overtime hours."  ECF No. [79] at 1–2.  Further, Defendants argued that they were entitled to summary judgment on the BCLWO claim (Count III) because "given [Plaintiffs] own testimony, [Plaintiffs] cannot show that BAGS paid them less than was required under the BCLWO."  *Id.* at 3.

Plaintiffs' summary judgment filing consisted of a 25-page summary judgment motion, a 14-page statement of undisputed facts, and 41 exhibits spanning 1,043 pages.  ECF Nos. [88], [89]. Plaintiffs requested summary judgment on Defendants' liability under the FLSA (Count I), arguing that the record conclusively established that Defendants failed to pay overtime and improperly deducted thirty-minute meals breaks.  ECF No. [88] at 11–12.  Plaintiffs further requested summary judgment on Defendants' fifth and sixth affirmative defenses as to the applicability of the statute of limitations and Defendants' third and fourth affirmative defenses on good faith.  *Id.* at 8.

On February 18, 2020, the District Court entered its Order on the Motions for Summary Judgment.  ECF No. [146].  As to the FLSA claim ("Count I"), the District Court concluded that although "no reasonable trier of fact could find that Defendants maintained accurate time records," there were issues of fact that precluded the entry of summary judgment.  *Id.* at 8.  Specifically, the District Court found that there were issues of fact regarding "how many hours each Plaintiff worked, how many breaks each Plaintiff took, how long each break lasted, whether Defendants interrupted Plaintiffs' breaks but failed to compensate them for the residual time, and more."  *Id.* at 8.

As to the state law breach of contract claim (Count II), the District Court granted summary judgment in Defendants' favor finding that "no express written contract exists between the parties and that all Plaintiffs were at-will employees." *Id* at 10.  As to the BCLWO claim (Count III), the District Court granted summary judgment in Defendants' favor finding that they "complied with the Broward Ordinance by paying the mandated living wage for employees who receive health care benefits." *Id.*  Accordingly, on February 18, 2020, the District Court entered a Partial Final Judgment in Defendants' favor on Counts II and III of the Amended Complaint.  ECF No. [147].

On March 3, 2020, Plaintiffs filed their Motion for Reconsideration and to Amend the Order on Motions for Summary Judgment and to Amend Partial Final Judgment.  ECF No. [159].  Therein, Plaintiffs argued that reconsideration was warranted as to the breach of contract claim (Count II). *Id.* at 2.  On March 10, 2020, the District Court held a hearing on the matter.  ECF No. [171].  The District Court ultimately granted Plaintiffs' Motion for Reconsideration.  ECF No. [172] at 2.  On March 11, 2020, the District Court entered an Amended Partial Final Judgment in favor of Defendants as to Count III only and leaving Counts I and II to be tried to the jury.  ECF No. [174].

### 4. The Settlement

On April 16, 2020, a settlement conference was held before the undersigned during which the parties agreed to settle their claims.  ECF No. [211].  On May 28, 2020, the District Court approved the settlement agreement in its entirety and dismissed the case with prejudice, retaining jurisdiction to enforce the agreement and determine entitlement to attorneys' fees.  ECF No. [226]. The approved Settlement Agreement provides, in relevant part: (1) "Defendants shall pay Plaintiffs Twenty-Two Thousand Five Hundred and xx/100 Dollars ($22,500.00) . . . via checks payable to each Plaintiff"; (2) "Plaintiffs are the prevailing parties in the Action under Count I (FLSA) and Count II (Breach of Contract) for purposes of entitlement to attorneys' [ ] fees and costs, which the

amount of such attorneys' fees and costs shall be determined by the Court in this Action"; and (3) "Defendants waive any and all claims for entitlement to any attorneys' fees or costs against Plaintiffs in this Action, but Defendants do not waive the right to raise any arguments in response to Plaintiffs' petition for award of attorneys' fees and costs."  ECF No. [220-2] ¶¶ 1–2.

### B.   Plaintiffs' Motion For Attorneys' Fees And Costs

On September 2, 2020, Plaintiffs filed the instant Motion for Attorneys' Fees Costs seeking: (1) $741,275.00 in attorneys' fees plus $31,090.00 in fees on fees; (2) a contingency fee multiplier of 2.0; (3) their expert witness fee "of at least $46,813.09," and (4) non-taxable costs in the amount of $61,637.89.  ECF Nos. [267] at 7, 25–26, [267-11] ¶ 61, [279] at 1, [294] at 9:9–13.  Plaintiffs attribute the 1,714 hours billed across four (4) attorneys and two (2) paralegals to Defendants' bad faith ligation tactics and failure to seriously participate in settlement negotiations.  ECF No. [267] at 6–7.  Further, Plaintiffs request the imposition of the fee multiplier, arguing that: (1) "this case was unique because it was a multi-plaintiff case, with a number of Plaintiffs speaking primarily Creole," *Id.* at 23; (2) "Plaintiffs' counsel was unable to mitigate the risk of non-payment for the resulting extensive litigation," *id.*; (3) Plaintiffs obtained an excellent result of other non-Plaintiff employees of Defendants, because Defendants stopped the practice of improperly deducting meal break times," *id.* at 24; and (4) Defendants used "their counsel's international law firm with unlimited resources, elected to go to the mat against low-wage wheelchair attendants, forcing Plaintiffs' counsel – a small firm – to go 'toe-to toe over the issue,'" *id.* at 25. As to the expert witness fee, Plaintiffs argue that Defendants' bad faith, dilatory litigation tactics, and failure to maintain records as required by the FLSA made a forensic computer expert necessary.  *Id.* at 25–26.  As to the non-taxable costs, Plaintiffs also argue that they are entitled to them under Section 448.08 of the Florida Statutes because Plaintiffs are prevailing parties in their state law action for unpaid wages (Count II).  *Id.* at

27. Finally, Plaintiffs request that this Court enter sanctions in the form of attorneys' fees and costs against Defendants and their counsel given their "pattern of concealment, omission of facts, misrepresentations and dilatory litigation tactics designed to obstruct Plaintiffs' discovery efforts." *Id.* at 27.

In Response to Plaintiffs' Motion, Defendants argue that this Court should not award any attorneys' fees because: (1) Plaintiffs overstated their potential damages in their Statement of Claim making settlement impossible and effectively driving up their fees, ECF No. [272] at 7–9; (2) Plaintiffs inflated their fees by exaggerating the number of hours expended, *id.* at 9–10; (3) Plaintiffs ignored the actual monetary substance of the dispute, extracting as many fees as possible by turning a simple claim for lost wages into a complex set of claims, *id.* at 10–14; and (4) Plaintiffs' abusive and uncivil litigation conduct should not be rewarded, *id.* at 14–19. In the alternative, Defendants argue that Plaintiffs' fees should be reduced because: (1) the fee request is grossly disproportionate to Plaintiffs' $22,500 recovery, *id.* at 19–20; (2) the fees should be reduced for lack of success when compared to the Statement of the Claim, *id.* at 20–21; (3) the requested rates of $600 per hour for one attorney and $550 per hour for two additional attorneys are grossly excessive, *id.* at 21–22; (4) Plaintiffs' counsel was abusive and unprofessional, *id.* at 22; (5) Plaintiffs' counsel exaggerated their fee records, *id.* at 22; (6) many entries are "hopelessly vague," *id.* at 22–23; (7) Plaintiffs' counsel improperly seeks reimbursement for "review of the most perfunctory documents," *id.* at 23; (8) Plaintiffs' counsel is precluded from charging for clerical work, *id.* at 23; and (9) Plaintiffs' counsel improperly engaged in block billing, *id.* at 23–24.

Additionally, Defendants argue that state law does not apply to the issue of attorneys' fees because Plaintiffs did not recover any money on their state law claims, but, even if Plaintiffs had recovered on their state law claims, the two actions were brought pursuant to this Court's

supplemental jurisdiction such that federal law applies. *Id.* at 24–25. Notwithstanding, Defendants implore that an award under Section 448.08 is discretionary and that Plaintiffs have not provided any justification for the imposition of fees under the Florida statute. *Id.* at 25–26. As to the multiplier, Defendants note that Plaintiffs' request is premised on inaccuracies regarding Defendants' disposition for settlement and the false assertion that Plaintiffs would have any difficulty finding competent FLSA counsel in this District. *Id.* at 26–27. Finally, Defendants argue that Plaintiffs are not entitled to a fee multiplier because the assertion that Defendants went to the mat is "groundless." *Id.* at 27. Defendants note that only Plaintiffs are at fault for driving up their fees in their "pit bull approach to litigation." *Id.* at 28. Finally, Defendants argue that Plaintiffs are not entitled to non-taxable costs under the specific mandates of 29 U.S.C. § 216(b) and 28 U.S.C. § 1920 or under the inapplicable state law provisions. *Id.* at 29.

### C.  Defendants' Motion For Sanctions

On October 20, 2020, Defendants filed the instant Motion for Sanctions. ECF No. [284]. Defendants seek sanctions pursuant to 28 U.S.C. § 1927, or alternatively pursuant to this Court's inherent power, because: (1) counsel refused to dismiss the claims for Plaintiff Maxean despite representing that they would, *id.* at 5–8; (2) counsel made misrepresentations to the Defendants and the Court for the purpose of obstructing litigation and prejudicing Defendants, *id.* at 8–15; and (3) counsel "belittled, harassed, bullied, and threatened Defendants' counsel," *id.* at 20. Defendants request an award of attorneys' fees and that Jason Alderman and Kristy Johnson be required to attend continuing legal education courses on professionalism. *Id.* at 21.[4]

---

[4] On April 26, 2021, Defendants filed a Notice of Supplemental Authority. ECF No. [314]. The Notice includes citations to: (1) a Florida Supreme Court order approving a referee report directing an attorney to participate in a professionalism workshop; (2) an attorney's conditional guilty plea for consent judgment where the lawyer admitted to filing a frivolous lawsuit; and (3) a November 2, 2018 order from the United States District Court for the Northern District of Florida, wherein the

In response to Defendants' Motion for Sanctions, Plaintiffs argue that the Motion must be denied because: (1) the Motion is untimely, as Defendants waited over five months after approval of the Settlement Agreement and subsequent dismissal of this case to seek sanctions, ECF No. [302] at 9; (2) Defendants did not comply with any of the requirements of Southern District of Florida Local Rule 7.3 in requesting attorneys' fees, *id.* at 10–12; (3) Defendants waived any claims to attorneys' fees in costs under the Settlement Agreement, *id.* at 12–14; and (4) Defendants' allegations in support of their Motion are factually inaccurate, *id.* at 14–25.

## II.   ANALYSIS

Under the American Rule, "absent a specific provision of Congress, a litigant may not recover attorney's fees." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Thus, fee awards are mandatory for prevailing plaintiffs in FLSA cases." *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1346 (S.D. Fla. 2007); *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing

---

court granted the defendants' motion for costs under Rule 68 and denied the plaintiff's motion for attorneys' fees and costs. *Id.* The Court notes that the Florida Supreme Court order and the guilty plea are not instructive because the proceedings in those cases are not remotely analogous to the proceedings here, and as such, they will not be discussed further. Additionally, the Court will not consider the Northern District of Florida order because it was available to Defendants when they filed their Opposition and at the time they filed their Motion for Sanctions. *See Girard v. Aztec RV Resort, Inc.*, No. 10-62298-CIV, 2011 WL 4345443, at *2 (S.D. Fla. Sept. 16, 2011) ("[S]upplemental filings should direct the Court's attention to legal authority or evidence that was not available to the filing party at the time that that party filed the original brief to which the subsequent supplemental filing pertains"). In any event, the citations provided are not controlling, nor frankly, are they persuasive.

party in FLSA cases."); *Kreager*, 775 F.2d at 1542 (noting that the FLSA "makes fee awards mandatory for prevailing Plaintiffs").

The issue of attorneys' fees and costs, as with many of the issues in this case, is being litigated in the extreme both in terms of the positions taken and the tone with which the parties present their arguments.  Indeed, Plaintiffs' position on attorneys' fee can be summarized as follows: because Defendants' counsel chose to aggressively litigate the matter, they are entitled to over a *million dollars* for an FLSA case that did not present any complex or novel factual pattern or legal issue, and where the highest calculation of the Plaintiffs' damages was never more than $131,176.20, including liquidated damages.  Plaintiffs' position presumes that the only way to properly litigate a matter is to do so without any regard for cost.  It also overlooks the fact that Defendants had a right to defend the case.  Not to be outdone, Defendants' response can be summarized as follows: because Plaintiffs' counsel aggressively litigated the matter, they are entitled to *nothing*.  Defendants' position effectively overlooks the fact that Plaintiffs prevailed on their FLSA claims.  It also overlooks the fact that Defendants made no settlement offer at all until *after* the conclusion of summary judgment leaving Plaintiffs with little option but to prosecute their case.  The Court now endeavors to focus on the facts and the law, a strategy that should have been more closely considered by both counsel in setting forth their arguments.

### A.  Plaintiffs Are Entitled To Attorneys' Fees.

The Settlement Agreement made clear that "Plaintiffs are the prevailing parties in the Action under Count I (FLSA) and Count II (Breach of Contract) for purposes of entitlement to attorneys' [ ] fees and costs . . . ."  ECF No. [220-2] at 2.  The District Court entered its Amended Order Approving Settlement Agreement and Dismissing Case with Prejudice, specifically providing:

> The Settlement Agreement, which was announced on the record on
> April 16, 2020 at the Settlement Conference with Magistrate Judge

> Becerra [ECF No. 220-1] is **APPROVED** in its entirety. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). Plaintiffs are the prevailing parties under Count I (FLSA) and Count II (Breach of Contract) of the Amended Complaint [ECF No. 48] for purposes of entitlement to reasonable attorneys' fees and costs; the amount of such attorneys' fees and costs shall be determined by the Court.

ECF No. [226] at 1–2 (emphasis in original). Therefore, under the FLSA, the Court must award attorneys' fees and costs in prosecuting the underlying case to Plaintiffs as the prevailing parties.

In addition, a party may also "recover the cost of establishing their right to, and the amount of attorney's fees–the right to fees-on-fees." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010); *Johnson v. S. Florida Paving Group, LLC*, No. 16-CV-62689, 2020 WL 5113592, at *1 (S.D. Fla. Aug. 31, 2020) ("'Fees on fees' are recoverable in FLSA cases.") (citing *Touzout v. Am. Best Car Rental KF Corp.*, No. 15-61767-CIV, 2017 WL 5957664, at *9 (S.D. Fla. Nov. 30, 2017)); *Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1329 (S.D. Fla. 2015) (noting that the time spent litigating a fee claim is recoverable). As such, the Court finds that Plaintiffs are entitled to recover "fees on fees" for the time spent litigating the instant fee petition.

Plaintiffs argue that they are prevailing parties under the FLSA but also argue that "[s]tate substantive law controls [their] state law claims for attorneys' fees." ECF No. [267] at 21. It is Plaintiffs' position that under Section 448.08, Florida Statutes, they are entitled to attorneys' fees and costs for their state law breach of contract claim (Count II). *Id.* Defendants argue that state law does not apply to Plaintiffs' request for attorneys' fees, but even if it did, Plaintiffs are not entitled to attorneys' fees under Florida law because: (1) they "did not recover a dime on their state law breach of contract claim; (2) the causes of action under Florida law were brought pursuant to this Court's supplemental jurisdiction; and (3) "Plaintiffs provide no reason why the Court should exercise its discretion to award fees under § 448.08." ECF No. [272] at 25–26.

As a preliminary matter, the Court finds that Plaintiffs prevailed on Count I, the FLSA count, and as such, are entitled to their reasonable attorneys' fees and costs.  The settlement agreement makes this clear and no reasonable dispute of this should have followed.  Moreover, the factual core of the FLSA and state law unpaid wages claims are clearly intertwined.  Indeed, Defendants' argument that Plaintiffs recovered zero on the state law unpaid wages claim is of no moment as Plaintiffs are entitled to recovery under the FLSA.  Finally, any adjustment for lack of success as to Count II, which would be minimal given the factual underpinnings of the claims, is sufficiently accounted for in the reduction that the Court has already considered below.

Having found that Plaintiffs are entitled to attorneys' fees, the Court must now determine what amount is reasonable.  Defendants argue that the reasonable amount is zero and advance several arguments in that regard.  The Court will first review each of Defendants' arguments.

### 1. Defendants' Argument That Plaintiffs Are Entitled To Zero Because They Overstated Their Damages Is Unpersuasive.

Defendants argue that Plaintiffs overstated their potential damages in their Statement of Claim, making settlement impossible, and effectively driving up their fees.  ECF No. [272] at 7. Specifically, Defendants argue that "Plaintiffs' counsel made negotiations impossible by repeatedly demanding far more in back wages than Plaintiffs possibly could have recovered." *Id.*  Further, Defendants note that Plaintiffs' counsels engaged in litigation tactics aimed at driving up fees while ignoring the true value of Plaintiffs' claims. *Id.*  In response, Plaintiffs argue that they should not be penalized for their estimated damages at the onset and for later accepting a lower settlement amount.  ECF No. [279] at 12.

Defendants' reliance on *Powell v. Carey International, Inc.*, 547 F. Supp. 2d 1281 (S.D. Fla. 2008), *aff'd*, 323 Fed. Appx. 829 (11th Cir. 2009), is unpersuasive.  In *Powell*, defendants offered to resolve the FLSA claims *before* the suit was filed for approximately "$80,000, plus a lump sum

of $30,000 in attorneys' fees." *Id.* at 1287 (emphasis added). Plaintiffs rejected the offer and filed suit, demanding as much as $15 million (excluding attorneys' fees and costs) at one point. *Id.* After two years of litigation, plaintiffs received "less than they would have received had they settled their claims prior to instigating [the] action." *Id.* at 1287–88 (emphasis omitted). In considering plaintiffs' motion for attorneys' fees and costs, the district court concluded that a reduction in the attorneys' fee award was necessary because "[p]laintiffs' counsel's unrealistic and legally unsupportable damage calculations derailed settlement negotiations prior to suit, required the hiring of experts and mandated numerous pretrial hearings and briefings and ultimately the appointment of a special master." *Id.* at 1286.[5]

Unlike in *Powell*, the record before the undersigned does not reflect that Plaintiffs refused any reasonable settlement offers made by Defendants because no offer to settle the case appear to have ever been made by Defendants until after summary judgment when the case did in fact settle. The record demonstrates that the parties participated in multiple settlement negotiations and that Plaintiffs made a written settlement offer on December 13, 2019 (before summary judgment) that would have prevented Plaintiffs from incurring more than half of the fees they now seek. Specifically, when the parties appeared for the August 8, 2019 settlement conference and the September 9, 2019 mediation, the operative Statement of Claim estimated $36,111.00 in damages. ECF No. [13] at 2–3. As of August 8, 2019, Plaintiffs' counsel had billed $29,105.00 in attorneys'

---

[5] Defendants also rely on *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353 (W.D.N.Y. 2012). In *Mendez*, the court reduced the hours expended by plaintiffs' attorneys because "[p]laintiffs did not use billing judgment in calculating the number of hours reasonably expended." *Id.* at 358. Specifically, the court noted that "[m]ost significant in this regard is the [p]laintiffs' continued refusal to settle the case, where the only impediment to settlement appears to have been the amount of their request for attorneys' fees. . . ." *Id.* It is unclear why this case was cited to the Court given that it is neither controlling nor similar to the facts at hand. Indeed, the record here is devoid of any attempt made by Defendants to settle the matter.

fees.  ECF No. [267-2] ¶ 20.  As of September 9, 2019, Plaintiffs' counsel had billed $37,575.00 in attorneys' fees.  *Id.* ¶ 21.  The record further reflects that on December 13, 2019, the date of Plaintiffs' settlement offer, the operative Amended Statement of Claim estimated $131,176.20 in damages.  ECF No. [52].  Plaintiffs' December 13, 2019 settlement offer was for $207,959.23 (53,959.25 in unpaid wages and $154,000.00 in attorneys' fees and costs).  ECF No. [267-2] at 147–48.  At that point, Plaintiffs' counsel had billed $197,595.00 in attorneys' fees.  *Id.* at 175.

Now, Plaintiffs' offers to settle may have been completely unreasonable, either objectively or from Defendants' perspective.  That is of no moment here where Defendants chose not to counter *any* of those offers, nor did they choose to make *any* offer themselves.  Indeed, had Defendants offered Plaintiffs something to settle the case during the earlier settlement conferences or mediation, perhaps *Powell* would be instructive.  They did not, and as such, the *Powell* reasoning simply does not support a finding that no fees should be awarded.

In addition, even if the facts showed some attempts to settle, the *Powell* court chose to reduce the attorneys' fees by sixty-seven percent, not discount them to zero.  *See Powell*, 547 F. Supp. 2d at 1297.  Now, to be clear, a defendant is under no obligation to settle a case or to even try to, but the decision not to settle until after summary judgment has consequences when, as here, the plaintiff later prevails.  As outlined more fully below, Plaintiffs' counsel lack of billing judgment, which is essentially what can be argued on these facts, is a proper basis for a downward adjustment, but does not justify awarding Plaintiffs zero in attorneys' fees.

### 2.  Defendants' Argument That Plaintiffs Are Not Entitled To Fees Because Counsel Inflated The Number Of Hours Billed Has Little Merit.

Defendants argue that the Court "should award Plaintiffs' counsel $0 in fees because their gross inflation of their attorneys' fees constitutes an abuse to the judicial system and because their conduct aimed at driving up fees undermines the benevolent statutory purpose behind the FLSA."

ECF No. [272] at 7.  Specifically, Defendants argue that the Court should award zero in attorneys' fees because Plaintiffs' counsel exaggerated the number of hours expended on specific tasks (*e.g.*, billing 8 hours for a 6.7-hour deposition).  *Id.* at 9.

Specifically, Defendants' objection relies on their review of certain deposition and hearing entries for which there are objective record which reflect the duration of those events.  *Id.*  For example, Defendants argue that Plaintiffs inflated a November 14, 2019 entry for traveling to and attending the deposition of Plaintiff Vedrine because the deposition transcript reflects that the deposition lasted 6.7 hours, and yet Plaintiffs' counsel billed 8 hours.  *Id.*  However, in the addendum to the entry, Plaintiffs' counsel specifically addresses the additional time billed, stating: "[t]ranscript times do not reflect time spent with client pre/post deposition, pre/post conversations with opposing counsel/court reporter, pre/post organization on the day of the deposition."  ECF No. [267-2] at 72. Likewise, Defendants object to (1) 7.3 hours for the deposition of Plaintiff Dorelus, which only lasted 5.4 hours; (2) 8 hours for the deposition of Plaintiff Saint Louis, which only lasted 6.9 hours; (3) 6 hours for the deposition of Plaintiff Santil, which only lasted 5.2 hours; (4) 3 hours for the deposition of Daniel Vazquez, which only lasted 2.2 hours; and (5) 6.5 hours for attending a hearing, which only lasted 5 hours.  ECF No. [272] at 9.  As with the deposition of Plaintiff Vedrine, Plaintiffs' counsel justifies the entries by stating that they include time for preparation and conferral. *See* [267-2].

The Court has reviewed each entry provided by Plaintiffs, as well as the objections to each provided by Defendants.  The Court finds that although the number of hours billed by Plaintiffs' counsel may be high in some instances for a particular task, they do not rise to the level of fraud, as Defendants propose.  Indeed, the difference in the times of the depositions or hearings and the time billed is not significant, and in fact, are consistent with a lawyer preparing and/or conferring with a

client.  Therefore, while lack of billing judgment may warrant a reduction for other reasons, the argument provided by Defendants is unpersuasive.

### 3.  Defendants' Argument That Plaintiffs Disregarded The Value Of The Case, And Therefore, Should Not Be Entitled To Fees, Also Fails.

Defendants further argue that Plaintiffs' counsels are entitled to zero in fees because they ignored the actual monetary substance of the dispute, extracting as many fees as possible by turning a simple claim for lost wages into a complex set of claims.  ECF No. [272] at 10–11.  Defendants specifically object to the billing entries related to Plaintiffs' sanctions motions.  *Id.* at 11.  Defendants characterize these sanctions request as an "unsuccessful detour."  *Id.*  For example, Defendants object to the 306.5 hours billed through March 9, 2020 for the pursuit of discovery sanctions.  *Id.* Defendants argue that this "detour" was an attempt to "churn the file" particularly because the Court did not impose sanctions, but instead awarded fees pursuant to Rule 37's fee shifting provisions.  *Id.* at 11–12.  Plaintiffs counter that by stating that their claims here was not frivolous.  ECF No. [279] at 3–4.

Defendants rely on *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162 (S.D. Fla. 2003), where the plaintiff's sought "$12,610 in attorney's fees and $6,597.50 in post-motion attorney's fees" on a $316.00 FLSA claim.  *Id.* at 1168.  The court concluded that "it would be unreasonable and indeed, unjust, to force [d]efendants to pay any of [p]laintiff's attorney's fees, since the suit was frivolous in the first instance and [p]laintiff's counsel grossly exaggerated the amount of hours expended."  *Id.* at 1169.  The court explained that the settlement was "a nuisance settlement that was made solely in an effort to avoid the expense of litigation.  Moreover, [the d]efendants attempted to resolve the case numerous times in an effort to avoid precisely the grossly excessive fee requests that are present."  *Id.* at 1168.

Defendants' reliance on *Goss*, however, is clearly misplaced.  First, Plaintiffs' claims were neither frivolous nor groundless, which is supported by the fact that Plaintiffs were able to overcome summary judgment on their FLSA and breach of contract claims.  *See* ECF Nos. [146], [172].  Second, although the Settlement Agreement in this case was not a large sum, it was not a nominal or nuisance figure.  Moreover, in *Goss*, the District Court noted the defendant's multiple attempts to resolve the case, again, a factual scenario different than the one here.

The Court is unpersuaded by Defendants' attempt to place the blame for this exorbitant fee petition entirely on Plaintiffs.  Defendants, too, bear some responsibility for setting the tone of this litigation.  For example, the onerous nature of discovery in this case did not happen in vacuum and it was certainly not one sided.  Defendants in their Opposition quote the Court's conclusion during one discovery hearing not to impose sanctions, however, they omit other parts of the discovery hearing where the Court concluded the Plaintiffs were entitled to fees under Rule 37 because "[n]o documentation was provided as to one Plaintiff until after the Court got involved."  ECF No. [213] at 46:20–22.  Additionally, regarding the payroll and raw punch data, the Court concluded that Plaintiffs were entitled to fees under Rule 37 because "Defendant should have been prepared and should have been in a position to provide all the information and accurate information as to those.  And having to take that deposition and going to Canada to take that deposition really should not have been necessary if that information had been provided at the first instance."  *Id.* at 47:21–23.  The fact that Plaintiffs' pursued sanctions, as well as Rule 37 relief, is of little moment as the litigation on the discovery issues would have been roughly the same regardless of the relief and the Court ultimately found that Plaintiffs were entitled to that relief.[6]  The fact Plaintiffs did not need to

---

[6] Defendants' argument fails to note that they too sought sanctions under Rule 11.  *See* ECF No. [279] at 8–9.  Specifically, Defendants served Plaintiffs with an unfinished Rule 11 motion regarding the dismissal of all claims against Defendant SP Plus.  *Id.* at 8.  When advised that the motion was

19

spend over 300 hours on the discovery issues is fully addressed below but is certainly not sufficient to award them no fees.

### 4.   Defendants' Argument That Plaintiffs Are Not Entitled To Fees Because Counsel Was Abusive And Unprofessional Is Entirely Unpersuasive.

Defendants argue that the Court should award zero in fees because it should not reward Plaintiffs' counsel's "abusive and beyond uncivil" conduct as reflected in their multiple sanction threats, "insulting and snide remarks," and scorched earth approach to litigation.  ECF No. [272] at 15.  In support, Defendants rely exclusively on *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241 (11th Cir. 2009).  In *Sahyers*, "[t]he complaint set forth only a generic request for damages: no specific dollar amount was demanded."  *Id.* at 1243.  "Defendants served discovery on Plaintiff that asked her to disclose the total number of overtime hours she allegedly worked without sufficient pay and all evidence supporting that calculation."  *Id.*  "Plaintiff, however, objected to those requests and repeated that she worked in excess of 40 hours per workweek and wanted payment for it."  *Id.*  "Defendants also engaged in settlement discussions. But those talks proved unhelpful, as [p]laintiff asked for significant money damages without offering proof of the amount [d]efendants actually owed to her."  *Id.* (footnote omitted).  Ultimately, plaintiff accepted defendant's $3,500 offer of judgment.  *Id.*  Plaintiff then "asked the district court to award her $13,800 in attorney's fees and $1,840.70 in costs."  *Id.*

Relying on its inherent powers, the district court denied plaintiff's petition for attorneys' fees and costs.  *Id.* at 1244.  The Eleventh Circuit Court of Appeals affirmed, concluding that the district court's inherent powers supported its decision because "the lawyer for [p]laintiff made absolutely

_____

deficient, Defendants stated that it was sent in error, that they would amend the motion, and would then serve the amended motion.  *See* ECF No. [267-2] at 136.  An amended motion was never served and all claims against Defendant SP Plus were ultimately dismissed.  ECF No. [57].

no effort—no phone call; no email; no letter—to inform them of [p]laintiff's impending claim much less to resolve this dispute before filing suit." *Id.* at 1245.  The Eleventh Circuit noted that the district court did not abuse its discretion in determining that plaintiff's counsel's "conscious disregard for lawyer-to-lawyer collegiality and civility caused (among other things) the judiciary to waste significant time and resources on unnecessary litigation and stood in stark contrast to the behavior expected of an officer of the court. *Id.*  However, the Eleventh Circuit stated:

> We strongly caution against inferring too much from our decision today. These kinds of decisions are fact-intensive. We put aside cases in which lawyers are not parties. We do not say that pre-suit notice is usually required or even often required under the FLSA to receive an award of attorney's fees or costs. Nor do we now recommend that courts use their inherent powers to deny prevailing parties attorney's fees or costs. We declare no judicial duty. We create no presumptions. We conclude only that the district court did not abuse its discretion in declining to award some attorney's fees and costs based on the facts of this case.

*Id.* at 1246. The Court is unpersuaded by Defendants' argument that Plaintiffs' litigation conduct somehow warrants awarding Plaintiffs *zero* in fees.  The facts in this case are readily distinguishable from those in *Sahyers*, where the plaintiff appears to have made no attempt to support the settlement demands made or identify the number of hours at issue.  This is not the case here.  Plaintiff certainly made demands, including one before the parties began preparing summary judgment that outlines the basis for the demand and the amounts at issue.

Additionally, the record does not support a finding that Plaintiffs exhibited a "conscious disregard for lawyer-to-lawyer collegiality and civility."  Specifically, Defendants argue that the Court should not reward Plaintiff counsel's multiple sanctions threats, "snide remarks" regarding defense counsel's qualifications, and failure to honor the agreements between the parties regarding how they were to proceed in the litigation.  ECF No. [272] at 1517.  Now, to be sure, it appears from the undersigned's review of the entire matter, as well as the litigation that was before it, that this

case was needlessly contentious.  However, the lack of collegiality and civility, even if wholly attributable to Plaintiffs' counsel, does not justify denying them a reasonable amount in fees.[7]

### B. The Reasonable Amount Of Attorneys' Fees Is $123,135.88.

The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  To determine a lodestar amount, a court must ascertain a reasonable hourly rate and multiply it by the number of hours an attorney reasonably expended on the litigation. *Id.*  Where the time or fees claimed appear excessive, or there is a lack of support for the fees claimed, "the court may make the award on its own experience." *Id.* at 1303.  The burden of establishing that the fee request is reasonable rests with the fee applicant, who must submit evidence regarding the number of hours expended and the hourly rate claimed. *Id.*  Evidence in support of the fee applicant's request requires "sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*  The party seeking fees must supply the Court with "'specific and detailed evidence' in an organized fashion." *Machado v. DaVittorio, LLC*, No. 09–23069–CIV, 2010 WL 2949618, at *1 (S.D. Fla. July 26, 2010) (quoting *Norman*, 836 F.2d at 1303).

---

[7] The Court also rejects Defendants' argument that counsel's alleged lack of civility in other cases justifies awarding zero fees here. *See* ECF No. [272] at 17–19.  Specifically, Defendants note that they found other cases "where Plaintiffs' counsel (unsuccessfully) moved for discovery sanctions." *Id.* at 17.  The instant case is not a disciplinary proceeding or a trial on counsel's conduct.  The Court is only bound to review the merits of this case.  Additionally, the Court rejects Defendants' needless admonishment that this opinion will be heavily cited by other FLSA litigants and, as such, could "incentivize litigants . . . to put their clients' interests above their own." *Id.* at 31 n.6.  The suggested precedential effect of this opinion is highly unlikely given the perfect storm of unpleasant conduct coupled with each side's inability to measure the actual merits of their position.  Nonetheless, judges are typically quite mindful of the impact of their opinions on any given area of the law such that counsel's reminder both at the oral argument and in its written brief was unnecessary, but perhaps useful only in showing *again* why the lawyers in this case were unable to litigate this matter in a reasonable fashion.

Plaintiffs request $778,480.00 in attorneys' fees for a total of 1,714 hours billed. ECF No. [267-2] at 118. Specifically, Plaintiffs request attorneys' fees as follows: (1) Jason Alderman, 231.50 hours at $600 per hour for a total of $138,900.00; (2) Kristy Johnson, 615.30 hours at $550 per hour for a total of $338,415.00; (3) Cristina Alonso, 244.70 hours at $550 per hour for a total of $134,585.00; (4) Troy Tolentino, 505.80 hours at $300 per hour for a total of $151,740.00. *Id.* ¶ 8. Plaintiffs request paralegal fees as follows: (1) Clayton Pengel, 38.80 hours at $150 per hour for a total of $5,820.00; and (2) Manuel Guanipa, 30.10 hours at $150 per hour for a total of $4,515.00. *Id.* In addition to the $778,480.00 billed, Plaintiffs request the imposition of an unspecified lodestar fee enhancement, ECF Nos. [267] at 21, [267-11] ¶¶ 53–54, and a 2.0 contingency risk multiplier under Florida law, ECF Nos. [267] at 24, [267-11] ¶ 61. Plaintiffs' Motion is supported by an invoice detailing each time entry entered in this matter. ECF No. [267-2] at 59–118. Plaintiffs have also provided the declarations of Jason R. Alderman, ECF No. [267-1], Kristy M. Johnson, ECF No. [267-2], Cristina Alonso, ECF No. [267-3], and Troy A. Tolentino, ECF No. [267-4], setting forth their professional qualifications, as well as the declarations of their fee expert, Joel H. Brown, ECF Nos. [267-11], [267-12].

### 1. The Reasonable Rate

A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. Under a fee-shifting statute, a prevailing plaintiff is only entitled to have the losing party pay for an attorney with reasonable expertise at the market rate, not for the most experienced attorney. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). While the expertise, experience, and prestige of the attorneys may be considered, fees are constrained to the range of the prevailing market rates. *Id.* The relevant legal

community for purposes of determining the reasonable hourly rate for an attorney's service is "the place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299. The Court is deemed an expert on the issue of attorneys' fees and rates and "may consider its own knowledge and experience concerning reasonable and proper fees." *Id.* at 1303.

However, in the context of fee-shifting statutes, federal law only requires compensation for a "competent and reasonably priced lawyer in a given market." *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *11 (S.D. Fla. July 15, 2011), *subsequently aff'd*, 492 Fed. Appx. 73 (11th Cir. 2012) (noting that "the hourly rate a court can award [the prevailing party] here must be materially less than what [the prevailing party] bargained for . . . ."). In other words, although an attorney may be well experienced and respected in his field, his hourly rate must be consistent with the type of work he did in a particular case. *See Wendel v. Int'l Real Estate. News, LLC.*, No. 19-21658-CIV, 2019 WL 12278752, at *2 (S.D. Fla. Dec. 16, 2019), *report and recommendation adopted sub nom. Wendel v. Intl Real Estate News*, LLC, No. 19-21658-CIV, 2020 WL 9552161 (S.D. Fla. Jan. 2, 2020). In *Wendel*, for example, the court concluded that although a well-respected practitioner could be entitled to the requested hourly rate of $425.00 in cases where "high level legal acumen" was required, he was only entitled to $300.00 per hour for an FLSA case where he "spent a considerable amount of time on tasks customary of a junior-level attorney." *Id.*; *see also Graves v. Plaza Med. Centers, Corp.*, No. 1:10-23382-CV, 2018 WL 3699325, at *5 (S.D. Fla. May 23, 2018), *report and recommendation adopted*, No. 10-23382-CIV, 2018 WL 3697475 (S.D. Fla. July 13, 2018) (concluding that hourly rates must be consistent with the "prevailing average rates for attorneys in the Miami legal market"); *Medrano v. Mi Colombia Bakery, Inc.*, No.

24

11-23916-CIV, 2013 WL 1748403, at *2 (S.D. Fla. Jan. 10, 2013) (reducing counsel's hourly rate from $400.00 to $375.00 because in the Southern District of Florida there is "now an abundance of experienced litigators available to handle such cases, even where vigorously defended through trial"). Simply put, an attorney's hourly rate must be commensurate with his or her experience, the prevailing market rate, and the complexity of the legal work performed. *See Garcia v. Pajeoly Corp.*, No. 18-23399-CIV, 2020 WL 764127, at *3 (S.D. Fla. Jan. 10, 2020), *report and recommendation adopted*, No. 18-CV-23399-CIV, 2020 WL 764035 (S.D. Fla. Jan. 31, 2020) (considering the experience of the parties, the market rate, and the nature of the case in construing counsel's reasonable hourly rate).

There are four lawyers who billed time in this case. First, Jason Alderman requests a rate of $600.00 per hour. ECF No. [267-1] ¶ 2. Mr. Alderman is the managing partner of The Alderman Law Firm. *Id.* ¶ 3. He has been practicing law for nearly 21 years, with a focus in "commercial, international, corporate fiduciary, valuation, and real estate litigation." *Id.* ¶ 7. Although he notes that he handles employment cases "from time to time," he states that he has "considerable working knowledge of wage and hour law, as well as Equal Employment Opportunity laws both at the Federal and State court levels." *Id.* ¶¶ 7, 16. Second, Kristy Johnson requests a rate of $550.00 per hour. ECF No. [267-2] ¶ 3. Ms. Johnson has "been practicing law for approximately 22 years," with "more than 15-years of specific expertise in the FLSA." *Id.* Third, Cristina Alonso requests a rate of $550.00 per hour. ECF No. [267-3] ¶ 3. Ms. Alonso has been practicing law for approximately 20 years and is a Board Certified in Appellate Practice. *Id.* Fourth, Troy Tolentino requests a rate of $300.00 per hour. ECF No. [267-4] ¶ 3. Mr. Tolentino has been practicing law for four years, with a focus in "labor and employment litigation and complex business litigation." *Id.*

There are two paralegals who also billed time in this case.  First, Plaintiffs' counsel requests $150.00 per hour for Clayton Pengel.  ECF No. [267-2] ¶ 14(a).  Mr. Pengel has been a litigation paralegal since 2005, who joined Plaintiffs' counsel in 2020.  *Id.*  It is unclear whether Mr. Pengel specializes in labor and employment matters.  Second, Plaintiffs' counsel requests $150.00 per hour for Manuel Guanipa.  *Id.* ¶ 14(b).  Mr. Guanipa "started working as a paralegal in 2016."  *Id.*  "During his time at the firm he has worked on business and employment litigation, and his duties include drafting and filing pleadings, assisting with discovery procedures, and preparing materials for depositions and hearings."  *Id.*  Before 2019, Mr. Guanipa "focus[ed] on veterans' disability benefits appeals, personal injury, and real estate."  *Id.*

The Court has carefully reviewed the qualifications of Plaintiffs' counsel, as well as other matters in this District where Plaintiffs' counsel have been awarded attorneys' fees.  Based on that review and on the Court's own experience, the Court finds that the following rates are appropriate: (1) Jason Alderman at $425.00 per hour; (2) Kristy Johnson at $425.00 per hour; (3) Cristina Alonso at $350.00 per hour; (4) Troy Tolentino at $270.00 per hour; (5) Clayton Pengel at $150.00 per hour; and (6) Manuel Guanipa at $100.00 per hour.  As a result of the adjustment in hourly rates alone, Plaintiffs' fee petition is modified to approximately $492,543.50.

Although Jason Alderman, Kristy Johnson, and Cristina Alonso may very well command upwards of $600.00 per hour in a commercial litigation case, the same does not apply for an FLSA case in this District.  There was nothing sophisticated or complicated about this case that could warrant said premiums.  As such, the Court must consider what it reasonable for FLSA practitioners in this District.  Based on its own experience with FLSA cases and a review of the case law in this District, the undersigned's reduction in hourly rate is amply supported.  *See Pena v. DSM Logistics Corp V*, No. 20-cv-62216-SMITH/VALLE, 2021 WL 3115915, at *3 (S.D. Fla. June 29, 2021)

(concluding that $375.00 was a reasonable hourly rate because "although counsel has substantial legal experience, the skills needed . . . fall within the usual realm of a labor law practice and do not warrant a higher hourly rate"); *Ramirez v. Supersonic of Florida, Inc.*, No. 20-21592-CIV, 2021 WL 2953628, at *3 (S.D. Fla. June 7, 2021), *report and recommendation adopted sub nom. Ramirez v. Supersonic of Florida, Inc.*, No. 20-21592-CIV, 2021 WL 2953194 (S.D. Fla. July 14, 2021) (reducing the requested hourly rate from $450.00 to $400.00 per hour based on the attorney's credentials and the nature of the case); *Tissone v. Osco Food Services, LLC*, No. 19-CV-61358, 2021 WL 1529915, at *5 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (concluding that $350.00 per hour was reasonable for an FLSA practitioner and $250.00 was reasonable for his associate "based on their experience, qualifications, and the prevailing market rates in South Florida"); *Garcia v. J & J, Inc.*, No. 19-CV-60728, 2021 WL 633377, at *6 (S.D. Fla. Feb. 1, 2021), *report and recommendation adopted sub nom. Garcia v. J&J, Inc.*, No. 19-CV-60728, 2021 WL 616529 (S.D. Fla. Feb. 17, 2021) (awarding $350.00 per hour in an FLSA case based on counsel's "experience, qualifications, and the prevailing market rates in South Florida"); *Mendez v. Integrated Tech Group, LLC*, No. 18-22059-CIV, 2020 WL 6826355, at *7 (S.D. Fla. Nov. 20, 2020) (awarding $390.00 per hour to an attorney who has been "practicing law since 1994 and has appeared in thousands of FLSA cases"); *see also Garcia*, 2021 WL 633377, at *6 (concluding that "$100.00 is a reasonable hourly rate for the work performed by paralegals" where their qualifications were unknown to the court); *Podzemelnyy v. Prolog Corp.*, No. 18-62395-CIV, 2020 WL 6064873, at *3 (S.D. Fla. Apr. 20, 2020), *report and recommendation adopted*, No. 18-62395-CIV, 2020 WL 6059794 (S.D. Fla. Oct. 14, 2020) (concluding that a paralegal rate of $150.00 per hour was reasonable for a paralegal specializing in FLSA). Indeed, the

Court could not find, and Plaintiffs did not provide, any authority in this District for a rate of $600.00 on a non-complex FLSA matter.

## 2.  Hours Expended By Plaintiffs' Attorneys

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation.  A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  A fee applicant must exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]." *Hensley*, 461 U.S. at 434. Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *Am. Civil Liberties Union of Ga.*, 168 F.3d at 428.  When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *See Bivins*, 548 F.3d at 1350.  In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable, but the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  Additionally, the party opposing the fee application must satisfy his obligation to provide specific objections concerning hours that should be included. *Norman*, 836 F.2d at 1301.

Plaintiffs argue that the hours billed are reasonable because they are a direct byproduct of Defendants' alleged failure "to seriously engage in settlement discussions."  ECF No. [267] at 18. Specifically, Plaintiffs argue that Defendants increased the costs of litigation because they forced Plaintiffs to participate in an unnecessary record-keeping dispute. *Id.*  Notwithstanding, Plaintiffs state that that the time entries submitted include Plaintiffs' "voluntary reductions . . . in response to issues raised by Defendants during the conferral process."  ECF No. [267-2] at 3.  Additionally,

Plaintiffs' counsel, in what it characterizes as "an exercise of billing judgment," notes that it: (1) reduced its fees by an additional $4,590, *id.*; (2) does not seek fees for the time incurred by its law clerk, a recent law school graduate, *id.* at 5; and (3) does not seek fees for the time incurred by a paralegal, who recently ceased to work for the firm, *id.* at 6. After accounting for those reductions, Plaintiffs claim that the reasonable number of hours expended for this case is 1,714. In addition to the hours expended, Plaintiffs also argue that they should receive a fee enhancement under federal law and a 2.0 contingency risk multiplier under Florida law given Defendants' litigation tactics and the results ultimately obtained by Plaintiffs' counsel. *Id.* at 20–21; *see also* ECF No. [267-11] ¶ 61.

In contrast, if the Court is inclined to award any fees, Defendants propose that the amount of time is unreasonable and that any award be significantly reduced. ECF No. [272] at 19. Specifically, they argue that the attorneys' fees award should be reduced because: (a) the request for $741,275.00 in fees is "grossly disproportionate to Plaintiffs' $22,500 recovery and wholly inconsistent with the FLSA's public purpose," *id.*; (b) there is a lack of success vis a vis the Statement of the Claim and loss of the Broward County Living Wage Ordinance Claim, *id.* at 20; (c) Plaintiffs' counsel engaged in "abusive and wholly unprofessional litigation conduct," *id.* at 22; (d) many entries are excessive, *id.*; (e) "many entries are hopelessly vague," *id.*; (f) "Plaintiffs' counsel seeks reimbursement for review of the most perfunctory documents, *id.* at 23; (g) the request includes times for clerical work, *id.*; and (h) there is improper block billing that makes it impossible to determine the time for each task, *id.* Finally, Defendants argue that Plaintiffs are not entitled to a fee multiplier because state law does not apply, but even if it did, the Court should not exercise its discretion in awarding a multiplier given the facts here. *Id.* at 28.

In challenging the fee petition, Defendants lodged line by line objections to Plaintiffs' time entries. ECF No. [272-6].[8]  Specifically, Defendants object to 951.75 of the 1,714 hours billed.  ECF No. [279] at 5.  However, given the sheer volume of the entries, Defendants propose an across-the-board of reduction of the fees demanded.  ECF No. [272] at 24.  In support, Defendants have submitted the affidavit of their fee expert, Terence G. Connor.  ECF No. [272-9].  Mr. Connor avers that the district courts in Florida account for most FLSA litigation in the United States.  *Id.* ¶ 11.  As a result, there are "numerous available and experienced FLSA" counsel.  *Id.*  Mr. Connor further testified that he is not aware of any case awarding a contingency fee multiplier within the context of the issues presented in this case.  *Id.* ¶ 13.  Mr. Connor also stated that it is his experience that counsel in a similar case would ordinarily be awarded $7,000 in fees.  *Id.*  Defendants also submitted that affidavit of Arlene K. Kline.  ECF No. [272-10].  Ms. Kline testified that the maximum fee award in a case like this is between $6,000 and $10,000.  *Id.* ¶ 9.

The Court has reviewed each entry provided by Plaintiffs, as well as the objections to each provided by Defendants.  The Court finds that the attorneys' fees sought are unreasonable and that a reduction is warranted.  In determining what reductions is appropriate, the Court elects to make its adjustment as an across-the-board reduction of seventy percent for the reasons set forth below.

---

[8] The Court rejects Plaintiffs' argument that Defendants' failure to specifically object to certain line items means that those fees must automatically be awarded.  ECF No. [279] at 5.  *See Norman*, 836 F.2d at 1301 ("As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.").  In this case, Defendants' objections are two-fold.  Defendants objected to the entire petition for various reasons.  These objections encompassed the fee petition in its entirety.  Defendants then went on to lodge specific objections based on different classes (*e.g.*, clerical work, block billing, etc.).  As a result, the Court finds that Defendants' objection are sufficiently precise.

a. **The Request Is Both Disproportionate To The Recovery, And Excessive Given The Success Obtained.**

Defendants argue that Plaintiffs' fee request is grossly disproportionate to Plaintiffs' actual recovery and should be reduced on that ground alone. ECF No. [272] at 19. In addition, Defendants argue that not only was the amount ultimately recovered small, it was a fraction of what was initially sought and as such Plaintiffs' fee award should be reduced due to lack of success. *Id.* at 20. Defendants argue that this Court should compare the $131,176.20 demanded in the Amended Statement of Claim with the eventual $22,500.00 recovery. *Id.* Additionally, Defendants argue that "critical to Plaintiffs' lack of success" was the loss of their BCLWO claim, which Defendants characterize as Plaintiffs' most valuable claim. *Id.* at 21.

In response, Plaintiffs argue that "there is no rule of proportionality between the attorneys' fees awarded and the plaintiff's recovery." ECF No. [279] at 2. As to the lack of success argument, Plaintiffs contend that it should be rejected because they are the prevailing parties and the estimates in the Amended Statement of Claim were merely preliminary figures that were prepared "in an effort to encourage a settlement dialogue." *Id.* at 12–13.

To be sure, the analysis on this issue can be complex, as a fee award "should not simply be proportionate to the results obtained by the Plaintiff." *Id.* (citing *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997)). Indeed, in FLSA cases, "it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case." *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005) (quoting *Holyfleld v. F.P. Quinn & Co.*, No. 90 C 507, 1991 WL 65928, *1 (N.D. Ill. April 21, 1991). Notwithstanding, "it is entirely proper for the court to take into account the results achieved in setting the [fee] award." *Walker v. Iron Sushi LLC*, 752 Fed. Appx. 910, 916 (11th Cir. 2018).

There is also ample case law indicating that demonstrable lack of success warrants a reduction in attorneys' fees. *See Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014) (finding a 75% reduction from the lodestar based on the plaintiff's "limited recovery" to be "reasonably proportionate to [the plaintiff]'s success in the lawsuit."). For example, in *Powell*, the FLSA plaintiffs originally sought over $15 million. 547 F. Supp. 2d at 1287. However, even though the plaintiffs obtained settlements totaling nearly $300,000.00, the court reduced the fees by 67% in light of the plaintiffs' nominal recovery in comparison with the amounts originally demanded in the case. *Id.* at 1297; *see also Gray*, 613 F.3d at 1040 (the fact that a plaintiff succeeds in only a limited way does not strip her of prevailing party status, but the degree of her success is "the most critical factor in determining the reasonableness of a fee award"). Likewise, in *Williams v. R.W. Cannon, Inc.*, an FLSA plaintiff's fee award was reduced where the pre-discovery damage estimate was $39,461.77 and the plaintiff was ultimately awarded $18,850.55 in damages. 657 F. Supp. 2d 1302, 1313–14 (S.D. Fla. 2009). The court concluded that it was the "combination of the comparatively limited result obtained as well as the disproportion of the fee request relative to the damage award that militates in favor of a downward adjustment of the lodestar." *Id.*

As an initial matter, the Court rejects Defendants' argument that the loss of the BCLWO claim is fatal to Plaintiffs' fee petition. At the hearing on the instant motion, Defendants argued that under the BCLWO, their exposure was $500.00 per week for every person whose rights had been violated. ECF No. [294] at 73:19–24. As a result, their exposure was between $546,000.00 and $650,000.00, if each Plaintiff worked seven days per week for fifty-two weeks per year. *Id.* at 74:1–5. The Court finds this argument unpersuasive as the record does not support a finding that all seven Plaintiffs worked seven days per week every week of the year in violation of the BCLWO to justify a $650,000.00 exposure. Finally, and perhaps most importantly, the record is silent as to Defendants'

exposure on that claim, the only assessment of that claim is made now in what appears to be an effort to further diminish Plaintiffs' success.  The value of that action is difficult to assess at this juncture and to assume it was as high as Defendants claim does not appear prudent.  To be sure, the claim was lost and to the extent that it required additional briefing and additional fact finding that was not intertwined with the Counts I and II some reduction may be warranted and the reduction proposed sufficiently addresses the loss of this claim.

Here, in their Amended Statement of Claim, Plaintiffs estimated that their total FLSA damages amounted to $131,176.20, and provided the following breakdown: (1) Plaintiff Pierre-Louis - $18,702.60; (2) Plaintiff Hilaire – $18,960.60; (3) Plaintiff Vedrine – $18,702.60; (4) Plaintiff Dorelus – $18,702.60; (5) Plaintiff Saint Louis – $18,702.60; (6) Plaintiff Maxean – $18,702.60; (7) Plaintiff Santil – $18,702.60.  ECF No. [52].  Ultimately, the Parties settled for a total of $22,500.00, as follows: (1) Plaintiff Pierre-Louis – $5,055.42; (2) Plaintiff Hilaire – $3,768.74; (3) Plaintiff Vedrine – $3,591.18; (4) Plaintiff Dorelus – $3,209.54; (5) Plaintiff Saint Louis – $2,705.00; (6) Plaintiff Maxean – $2,052.10; (7) Plaintiff Santil – $2,118.02.  ECF No. [220-2] at 2.  Although Plaintiffs recovered less than twenty percent of the damages initially sought, counsel maintains that attorneys' fee in excess of $700.000.00 are appropriate.  However, the Court finds this request unreasonable in relation to the ultimate recovery of $22,500.00 among all Plaintiffs which is not only a relatively small amount, and a fraction of what was originally requested.  As such, the Court agrees with Defendants that the fee petition is highly disproportionate to the ultimate recovery as well as exceedingly high given the success and recommends an across-the-board reduction on this basis.[9]

---

[9] The Court is unpersuaded by the argument that Defendants are precluded from arguing that the hours billed by Plaintiffs are unreasonable because "they refused to provide their own billing records."  ECF No. [279] at 6.  Indeed, under federal law, Defendants are under no obligation to

### b. Abusive And Unprofessional Conduct

Defendants argue that the fee award should be reduced given Plaintiffs' counsel's abusive and unprofessional litigation conduct.  ECF No. [272] at 22.  Defendants rely on *Salvador v. Brico, LLC*, No. 0:17-CV-61508, 2020 WL 1874066 (S.D. Fla. Apr. 15, 2020), where the court concluded that the 130.3 hours claimed by a prevailing plaintiff in an FLSA case was unreasonably high because, among other things, "the case generated a level of motion practice that, in the Court's experience, is unusual and excessive for an FLSA case." *Id.* at *2.  The court explained that "many of the filed motions could have been avoided had counsel for the parties acted professionally and amicably toward one another and communicated effectively." *Id.*

It should be clear that a routine FLSA case, as was this one, should not run up over $700,000.00 in attorneys' fees even if there are multiple plaintiffs and even if the matter is aggressively litigated.  It is clear to the Court that the merits did not consume these fees, but rather, the conduct of counsel.  To be sure, Defendants chose, as they have the right to do, to litigate as opposed to settle the matter early in the litigation.  Plaintiff is correct that that decision certainly bears on the amount of fees as the case was litigated for quite some time.  But litigating an FLSA case until after the disposition of summary judgment does not merit these kinds of fees.

Indeed, the Court already took issue with the lack of cooperation that appears to have marked some of the discovery in this case.  For example, Defendants failed to provide complete time records until they were ordered to do so by the Court.  ECF No. [213] at 46:20–22.  Additionally, counsels' failure to adequately confer regarding Defendants' raw punch data compelled Plaintiffs' counsel to

---

provide their own billing records.  *See generally Kalzip, Inc. v. TL Hill Const., LLC*, No. 8:11-CV-01842-T-27, 2013 WL 3242400, at *2 n.6 (M.D. Fla. June 25, 2013) (noting that the hours billed by opposing counsel are not determinative of reasonableness).

travel to Toronto, Canada to take the deposition of a Ceridian expert. *Id.* at 47:15–25, 48:1–13; *see also* ECF No. [267-2] at 78.

Of course, the conduct of defense counsel was not the sole issue. Although it does appear that Plaintiffs had to take discovery of the Ceridian representative to address their questions as to the time records, Plaintiffs did not just fly to Canada for the deposition. Two partners, flew to Canada for the deposition, spent over $4,000.00 in costs to attend the deposition, and billed over ten hours *each* to prepare for and attend the deposition. ECF Nos. [267-2] at 177, [272-6]. They then hired an expert to interpret those records at a cost that was almost as much as the damages Plaintiff could claim. ECF No. [89-20] at 5.[10]

The Court does not find that the conduct of counsel, in and of itself, is a proper basis for a reduction of the attorneys' fees. To the extent that Plaintiffs' counsel overly litigated the matter, both parties bear sufficient responsibility in the overly litigious nature of this matter such that to assign more fault to one over the other is not a wise expenditure of judicial resources. The Court further addresses the conduct of counsel in addressing Defendants' Motion for Sanction, but to be sure, no reduction of fees is warranted on this record.

---

[10] The record has other examples of how the failure of both counsels to discuss things in a reasonable manner led to needless litigation. For example, at the argument on the Motion for Attorneys' Fees before the Court, the undersigned noted that it did not appear that Defendants' Motion for Sanctions had yet been referred by the District Court. ECF No. [294] at 98:12–16. This was a non-issue that would have been resolved by the undersigned when the referral was reviewed against the recently filed motions. However, and not surprisingly perhaps, that would not be the case here as Plaintiffs' counsel chose to file a seven-page Motion for Clarification regarding the matters referred to the undersigned, ECF No. [295], which was, of course, followed by a six-page Response in Opposition, ECF No. [296], and a six-page Reply, ECF No. [298].

### c. Excessive Time Entries

Defendants argue that Plaintiffs' fees should be reduced because counsel exaggerated their fee records, or otherwise billed excessive time for the specific tasks at hand.  ECF No. [272] at 22. As previously set forth, Defendants state that they have cross-referenced Plaintiffs' billing entries with their own records and have found several inconsistencies.  *Id.* at 8–9.  For example, Defendants take issue with the time billed for the deposition of each Plaintiff because the entries reflect more time than the actual duration of the deposition (*e.g.*, 8 hours billed for the deposition of Plaintiff Vedrine, which only lasted 6.7 hours).  *Id.* at 9.  As a result, Defendants surmise that there are likely other excessive entries that they cannot cross-reference.  *Id.*  In response, Plaintiffs argue that "Defendants' assertions of excessive time cannot be evaluated sufficiently without a review of the corresponding time spent by Defendants; but Defendants refused to produce time records for the Court's review."  ECF No. [279] at 14.

As previously noted, a fee applicant must exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]."  *Hensley*, 461 U.S. at 434.  Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them."  *Am. Civil Liberties Union of Ga.*, 168 F.3d at 428.  In other words, "[i]f the party moving for fees fails to exercise the requisite billing judgment, the Court is obligated to do so by reducing the amount of hours and 'pruning out those that are excessive, redundant or otherwise unnecessary.'"  *Godoy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) (quoting *Am. Civil Liberties Union of Ga.*, 168 F.3d at 428).

In carefully reviewing the time entries, the undersigned takes issue with the duplication of efforts involved in having four lawyers work on the prosecution of this case.  Although there is nothing inherently unreasonable about having multiple lawyers work on a single matter, it is inexcusable that multiple attorneys, multiple *partners* in this case, repeatedly billed several hours

36

for the same task.  For example, as previously set forth, two partners traveled to Toronto to depose the Ceridian expert, incurring thousands in fees and costs.  ECF No. [267-2] at 78.  The Court disagrees with Defendants that traveling to Toronto to take the deposition in person was excessive because in-person depositions were commonplace in pre-COVID times.   Indeed, the Ceridian deposition was necessary because Defendants failed to produce complete and accurate records, and in fact, the deposition revealed discrepancies with Defendants' timekeeping.  However, the Court finds that it was excessive for two partners to attend the deposition of the Ceridian expert and bill upwards of ten hours each.  ECF No. [267-2] at 67–79.

Although this case was neither extraordinary nor complex as to warrant the preparation and attendance of two partners at a simple deposition, this was the pattern throughout the entire litigation.  Indeed, the time records reflect that multiple attorneys billed for each deposition in this case.  For example, on November 8, 2019, Mr. Alderman, a partner, billed 10.65 hours only for attending the deposition of Defendant Silva.  ECF No. [267-2] at 70–71.  Likewise, Ms. Johnson, another partner, billed 6 hours for attending the same deposition.  *Id.* at 71.  Additionally, Mr. Tolentino, an associate, billed 6.40 hours for attending the same deposition.  *Id.*  Even accepting that the deposition was that of a party, having two partners and an associate at the deposition was entirely unreasonable, and unfortunately commonplace in this case.  Moreover, the undersigned had the opportunity to review many of the depositions in this case as part of the discovery disputes that were before the Court.  The depositions themselves are often marked with tireless bickering and objections that certainly expanded the amount of time each deposition took.  To be sure, the participation of two partners in this case was entirely unnecessary.  Indeed Mr. Alderman's fees alone were almost $100,000.00.  Thus, the Court finds that Plaintiffs were more than adequately represented by one partner.

The record is replete with more examples of over-staffing.  As Defendants notes, Plaintiffs routinely sent "four lawyers to hearings where only one, or, rarely, two, lawyers spoke."  ECF No. [272] at 10.  For example, the record reflects that Ms. Alonso, Ms. Johnson, Mr. Alderman, and Mr. Tolentino all billed for attending a January 28, 2020 discovery hearing before the undersigned.  ECF No. [267-2] at 86.  Ms. Alonso, Ms. Johnson, and Mr. Alderman billed 5.50 hours each and Mr. Tolentino billed 10.70 hours for a requested $12,560.00.  *Id.*  However, the transcript of the hearing reveals that only Ms. Johnson and Mr. Alderman made arguments.  ECF No. [114].  The January 28, 2020 hearing was continued to February 5, 2020, where again, Ms. Alonso, Ms. Johnson, Mr. Alderman, and Mr. Tolentino all billed for attending.  *Id.* at 89–90.  Specifically, Ms. Alonso billed 6.50 hours, Ms. Johnson billed 5.00 hours, Mr. Alderman billed 5.00 hours, and Mr. Tolentino billed 10.20 hours for a requested $12,385.00.  *Id.*  Of course, these amounts do not include the time billed for preparation and conferral.

In addition, the Court notes that as of the date of the Statement of Claim, just one month from the filing of this action, Plaintiffs' counsel had already billed upwards of $20,000.00.  That type of billing continued but was perhaps most egregious between the December 13, 2019 settlement offer after the close of discovery and the September 2, 2020 filing of the instant motion. During that time period, Plaintiffs' counsel billed $580,884.75.  ECF No. [267-2] at 118, 175.  Over half a million dollars in fees is almost five times what counsel already knew were the damages, at most, that Plaintiffs could recover.  Although preparing summary judgment briefs can be time consuming, the legal issues here were straightforward and do not justify billing half a million dollars in just nine months.  Given both the number of lawyers billing the file, the excessive nature of many of the entries and the excessive nature of the billing for the summary judgment phase, the Court finds that an across the board reduction is appropriate on this ground.

### d.  Vague Entries

Defendants argue that Plaintiffs' fee award should be reduced because many entries are "hopelessly vague," making the purpose of the entry impossible to discern.  ECF No. [272] at 22.  For example, Defendants specifically take issues with entries for inter-office conferences, client meetings, and preparation for trial.  *Id.*  Defendants rely on *American Civil Liberties Union of Georgia v. Barnes*, in which the Eleventh Circuit concluded that "bare entries in the billing records— e.g., 'interview with potential plaintiffs,' 'correspondence with potential plaintiffs,' or 'meeting with potential plaintiffs'—do not establish that the time was expended on the litigation."   168 F.3d at 436.  Therefore, "[i]t is impossible to determine whether the time spent was for solicitation or for a purpose which is compensable."  *Id.*  "It is true that a Court may deduct hours from the time billed if it finds that the billing entries are [] unacceptably vague . . . ."  *Meyrowitz v. Brendel*, No. 16-81793-CV, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018).

Based upon a review of the record as a whole, although there may be a few vague entries, the undersigned can readily, if not sufficiently, discern the purpose of the entry.  Moreover, the undersigned finds that it is reasonable to include compensation for inter-office conferences and client meetings because such conferences and meetings were sporadic and reasonably necessary to coordinate work.  Specifically, when such conferences or meetings occurred, Plaintiffs sought to be reimbursed for only one attorney at a time, not for each of the attorneys that attended.  Therefore, the Court concludes that the across-the-board adjustment is sufficient to address any vague entries.

### e.  Perfunctory Documents

Defendants argue that Plaintiffs' fee award should be reduced because counsel seeks "reimbursement for review of the most perfunctory documents."  ECF No. [272] at 23.  Defendants argue that the time billed for review of simple documents, in many instances Plaintiffs' own filings,

is excessive (e.g., 0.1 entry for review of order granting motion to bring electronics into conference room).  *Id.*  As with the excessive time entries, as discussed above, the Court has carefully reviewed the record and only found a handful of entries for review of documents that could be considered excessive.  The across-the-board adjustment is sufficient to address any issues in this regard.

### f.  Clerical Work

Defendants contend that Plaintiffs' counsel have improperly charged for clerical work.  ECF No. [272] at 23.  "[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical, or which did not require the full exercise of an attorney's education and judgment."  *Norman*, 836 F.2d at 1306.  Clerical work includes "e-filing, on[-]line research of addresses, preparing civil cover sheets and summonses and [time] for reviewing the CM/ECF email for documents prepared and filed by [counsel]."  *Munoz v. Kobi Karp Arch. & Interior*, No. 09-21273-CIV, 2010 WL 2243795, at *6 (S.D. Fla. May 13, 2010), *report and recommendation adopted sub nom. Munoz v. Kobi Karp Architecture & Interior Design, Inc.*, No. 09-21273-CIV, 2010 WL 2243798 (S.D. Fla. June 4, 2010) (citing *Peress v. Wand, M.D.*, 597 F. Supp. 2d 1320, 1325–26 (S.D. Fla. 2008).

Defendants point to several entries as evidence of billing for clerical tasks.  ECF No. [272] at 23.  As with the excessive time entries, the Court only found a handful of entries that could be considered clerical, if only by a few hours in total.  Given the breadth of the time period at issue, the Court does not find that a further reduction for clerical entries is warranted.  The across-the-board adjustment is sufficient to address any issue of clerical time entries which the Court finds were few.

### g.  Block Billing

Defendants argue that Plaintiffs' counsel have various entries that do not distinguish tasks ("block billing") making it difficult to discern whether the amount of time that was expended for a

particular task was reasonable.  ECF No. [272] at 23.  Defendants urge the Court to discount those fees submitted in this fashion.  *Id.*

In a fee application, "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Am. Civil Liberties Union of Ga.*, 168 F.3d at 427.  "[T]he mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of [impermissible] block-billing." *Williams*, 657 F. Supp. 2d at 1312; *see also Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-cv-355-MCR-GRJ, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018) ("As a general proposition block billing is not prohibited so long as the Court can determine the services that were performed."); *Langford v. Hale Cty. Alabama Comm'n*, No. 2:14-00070-KD-M, 2016 WL 4976859, at *7 (S.D. Ala. Sept. 16, 2016) ("Although block billing is present, the descriptions are generally sufficient to reasonably ascertain the division of work among the hours.").

The Court has reviewed each of those entries as to the objection that they contain block billing and considered whether a reduction for that basis is warranted.  As an initial matter, given the overall number of entries, the Court finds that the use of block billing in this case was not extensive.  Although the entries cited by Defendants are not broken down into individual tasks, they included sufficiently thorough descriptions of the activities performed such that the Court can ascertain the division of work or otherwise conclude that the amount billed was reasonable.  As such, the Court finds that the individual tasks included in the "block billed" entries were reasonable such that the block billing alone is not sufficient to further reduce the award of attorneys' fees.

### C.  Plaintiffs Are Not Entitled To A Fee Enhancement

Plaintiffs request a lodestar enhancement in accordance with the recommendation of their fee expert, Joel Brown.  ECF No. [267] at 21.  However, both Plaintiffs and their fee expert propose an adjustment in general terms, without setting forth any specific amount.  *Id.*; *see also* ECF No. [267-11] ¶ 53 ("I also specifically opine that there is a justification to enhance the lodestar in this matter.").  Instead, they merely provide that an adjustment is warranted given Plaintiffs' "significant success" notwithstanding Defendants' alleged record-keeping deficiencies.  ECF No. [267-11] ¶ 53. Plaintiffs' fee expert notes "[a]lthough Plaintiffs ultimately recovered less damages than they originally estimated in Plaintiffs' State[ment] of Claim, such initial estimate was largely attributable to the fact that Defendants did not keep proper employee time-records."  *Id.*  The fee expert goes on to note that once the time-keeping deficiencies were discovered, Defendants' risk of liability "increased substantially," which was "a significant success" for Plaintiffs' counsel.  *Id.*  Moreover, the fee expert states that an enhancement is warranted because the instant lawsuit positively impacted Defendants' employees who are not part of the instant suit.  *Id.* ¶ 54.  Specifically, the fee expert states that "Defendant Silva stopped improperly modifying employee time records in the summer of 2019, which is after Plaintiffs filed this lawsuit."  *Id.*

Plaintiffs further request the imposition of a 2.0 contingency risk multiplier under Florida law.  ECF No. [267] at 21; *see also* ECF No. [267-11] ¶ 61.  Plaintiffs argue that a multiplier is warranted because: (1) this was a "multi-plaintiff case, with a number of Plaintiffs speaking primarily Creole" such that there is a smaller pool of attorneys available; (2) "Plaintiffs' counsel was unable to mitigate risk of non-payment for the resulting litigation" because Plaintiffs are low-wage workers who were unable to pay fees hourly; (3) "Plaintiffs obtained an excellent result for other non-Plaintiff employees of Defendants, because Defendants stopped the practice of improperly

deducting meals breaks"; and (4) Defendants refused to settle early, but instead chose to "go to mat" using their counsel's "unlimited resources."  ECF No. [267] at 23–25.

Defendants argue that Plaintiffs are not entitled to a fee multiplier because state law does not apply, but even if it did, the Court should not exercise its discretion.  ECF No. [272] at 28.  Moreover, Defendants argue that Plaintiffs are not entitled to a multiplier because: (1) the limited damage exposure in this case coupled with Plaintiffs' $22,500.00 recovery does not support a multiplier; and (2) FLSA counsel is abound in the Southern District of Florida such that the availability of counsel is not a justification for a multiplier.  *Id.* at 28–29.

Plaintiffs' enhancement argument lacks merits and is one more example of the throw-in-the-kitchen-sink approach with which this case has been prosecuted.  As to the lodestar enhancement, in *Perdue v. Kenny A. ex rel. Winn*, the Supreme Court concluded that a fee enhancement may be appropriate in three circumstances: (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation"; (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; and (3) in "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees."  559 U.S. 542, 554–56 (2010).  The Supreme Court explained that if the first scenario is implicated, "the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate."  *Id.* at 555.

The undersigned finds that such an enhancement is entirely unwarranted in this case.  The Court disagrees with Plaintiffs' expert and sees nothing exceptional about this litigation or the performance of counsel that would justify any upward adjustment.  There was no groundbreaking change in corporate policy that justifies a lodestar enhancement.  Indeed, the record reflects that the

text exchange wherein Defendant Silva admitted to changing the timesheets occurred in 2017, approximately two years before this lawsuit was filed.  The 2017 text messages also reveal that, as early as 2017, Defendant BAGS advised Defendant Silva that it was to refrain from deducting meal breaks.  Moreover, the Court finds that the lodestar in this case has to be *reduced* to fairly address the reasonable fee.  As such, no enhancement could possibly apply.

As to contingency risk multipliers, Plaintiffs rely on *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122 (Fla. 2017).  In *Joyce*, the Florida Supreme Court declined to accept the United States Supreme Court's stricter enhancement requirements under *Perdue*, concluding that "there is not a 'rare' and 'exceptional' circumstances requirement before a contingency fee multiplier can be applied." 228 So. 3d at 1235.  Instead, the Florida Supreme Court explained that, under Florida law, a contingency risk multiplier may assist "'parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis.'"  *Id.* at 1133 (quoting *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 411 (Fla. 1999)).

However, "Florida law does not permit a 'contingency risk factor multiplier' where there is no evidence in the record, and the trial court has not found, that without the enhancement, the plaintiffs would have faced substantial difficulties finding counsel in the relevant market." *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Corp.*, 465 Fed. Appx. 880, 882 (11th Cir. 2012) (quoting *Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990)).  Specifically, Florida courts consider the following factors in determining the necessity of a multiplier:

> 1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel;
>
> 2) whether the attorney was able to mitigate the risk of nonpayment in any way; and
>
> 3) whether any of the factors set forth in *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985), are applicable,

> especially the amount involved, the results obtained, and the type of
> fee arrangement between the attorney and his client.

*Id.* at *7 (quoting *Standard Guaranty Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990)).

Evidence of the factors must be present before a multiplier may be imposed. *Zunde v. Int'l Paper Co.*, No. 3:98CV439-J-20B, 2000 WL 1763843, at *3 (M.D. Fla. July 20, 2000) (citing *Quanstrom*, 555 So. 2d at 834).

It is not necessary to conclude whether state law applies because even if it did, the undersigned finds that there is absolutely no basis for a contingency risk multiplier in this case. First, there is no showing in the record that Plaintiffs would have had a substantial difficulty obtaining competent counsel. Specifically, the District enjoys a large and experienced FLSA bar and sees no merit to the argument that any counsel in this District would have been deterred from representing Plaintiffs. The undersigned is likewise unpersuaded by the argument that because the Plaintiffs primarily spoke Creole, they would have encountered a difficulty in obtaining competent counsel. Again, there is no record of that. In particular, the Court notes that apparently none of the attorneys who worked on this case speak Creole, ECF Nos. [267-1] ¶ 19, [267-2] ¶ 5, [267-3] ¶ 5, [267-4] ¶ 8; and yet Plaintiffs only spent $385.00 in interpreter services for *the entire matter.* ECF No. 228. The Court is hard-pressed to find any basis for a multiplier on these grounds. "This alone is fatal to Plaintiff's request for a fee multiplier because '[i]f there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded.'" *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 18-21365-CIV, 2019 WL 7905013, at *7 (S.D. Fla. Oct. 10, 2019) (quoting *USAA Cas. Ins. Co. v. Prime Care Chiropractic Enters, P.A.*, 93 So. 3d 345, 347 (Fla. 2d DCA 2012) (alteration supplied).

Second, Plaintiffs' counsel argues that a multiplier is necessary because counsel was unable to mitigate the risk of non-payment. The Court is entirely unconvinced by this argument because

the only evidence on the record to support such a finding is the existence of a contingency fee agreement with Plaintiffs, who are "low-wage workers." ECF No. [267] at 23. "[T]he existence of a contingent fee agreement alone does not mandate the application of a multiplier." *Id.* (citing *Sun Bank of Ocala*, 564 So. 2d at 1079). There is no record to support this request.

Third, Plaintiffs have not identified *any* factor that has not been accounted for in the lodestar calculation. As previously noted, although the Court recognizes that counsel obtained some success for Plaintiffs, the record does not reflect that this litigation prompted widespread corporate reform to warrant a multiplier. Even if this litigation put an end to Defendant Silva's practice of improperly deducting meal breaks, the same cannot be said for Defendant BAGS, who as early as 2017, admonished Defendant Silva for said practice. ECF No. [89-38]. Accordingly, this Court does not find any evidence to support a multiplier in this case.

Apart from the aforementioned factors, Plaintiffs argue that Defendants must bear the cost of a multiplier because they refused to settle early, opting to "go to the mat" with the "unlimited resources" of defense counsel's international law firm. ECF No. [267] at 24–25. Plaintiffs rely on *State Farm Fire & Cas. Co. v. Palma*, 555 So. 2d 836 (Fla. 1990). In *Palma*, "[the plaintiff] brought suit against State Farm, which answered that it was not required to pay for the thermographic examination because this treatment did not constitute a necessary medical service consistent with section 627.736, Florida Statutes (1983)." *Id.* at 836. The Florida Supreme Court noted "State Farm decided to 'go to the mat' over the bill for thermographic studies because, apparently, it is a diagnostic tool which [was] becoming more widely used contrary to State Farm's view of what is 'necessary medical treatment' as provided in the statute." *Id.* at 837. In awarding Palma prevailing party fees plus a multiplier, the court concluded that "contingency adjustment multiplier may be applied to those contingency fee arrangements in which the amount of the attorney's fee is not

46

controlled by the amount of the recovery." *Id.* at 838.  The court explained that the "risk of nonpayment and the extraordinary circumstances justify the use of a multiplier." *Id.*  However, the court cautioned that the case at hand was rare and unique because "the prevailing party ha[d] not been the primary cause of the extensive litigation." *Id.*

Here, this case does not demonstrate the type of rare and unique circumstances presented in *Palma*.  This was an unremarkable FLSA case that presented routine issues.  This case did not present a risk of nonpayment or extraordinary circumstances that would justify the imposition of a multiplier.  Instead, the record reflects that Plaintiffs had limited damages but a relatively strong case on the issue of FLSA liability that was formed by a straightforward fact pattern and relatively simple legal issue as was ultimately reflected in the settlement.

Accordingly, after accounting for the Court's recommended adjustment in hourly rates, Plaintiffs' fee petition was modified to approximately $492,543.50.  For the reasons set forth above, the Court finds that the relatively small recovery, the limited success and excessive billing require an across the board reduction of seventy five percent, which results in $123,135.88 as the reasonable amount of attorneys' fees for this action.  The Court notes that Defendants, by way of the expert affidavits, urge the Court to award a nominal amount in fees.  Although simple FLSA cases do not typically warrant the fee that is now recommended, this case was also aggressively defended leading to the litigation of issues that Plaintiffs could not simply ignore.

### D. Plaintiffs Are Entitled to Collect Attorneys' Fees In Connection with the Litigation Regarding its Fee Recovery.

Plaintiffs' counsel requests 54.4 hours for preparing the instant motion, 10 hours for Ms. Alonso's preparation for the hearing on the instant motion, and 3.5 hours for Ms. Alonso's attendance at the hearing.  ECF Nos. [279] at 1, [294] at 9:9–13.  In sum, Plaintiffs request $31,090.00 in fees on fees.  First, the Court adjusts the hourly rates, as noted above.  That adjustment

reduced the requested fee to $21,934.00.  The Court finds that the number of hours is also slightly excessive and should be reduced by twenty percent, thereby reducing the fees on fees request to $17,547.20.  Accordingly, the total reasonable fee for this action is $140,683.08.

### E.  Plaintiffs Are Not Entitled To Recover Additional Costs.

Plaintiffs have already been awarded $24,541.90 in taxable costs.  ECF No. [313].  Specifically, Plaintiffs were awarded: (1) $400.00 in filing fees; (2) $770.00 for summons and subpoena costs; (3) $22,266.15 in transcript-related costs; (4) $5.10 in printing costs; (5) $1,841.75 in copy costs; and (6) $385.00 in interpreter costs.  ECF No. [306] at 9–11.   Here, Plaintiffs argue that they are entitled to recover their exert witness fee of $46,813.09 because "Defendants litigated this case in bad faith."  ECF No. [267] at 25.  Plaintiffs note that although courts are generally not authorized to award expert witness fees, an exception exists for bad faith litigation.  *Id.*

In *Glenn v. General Motors Corp.*, the Eleventh Circuit considered whether the district court correctly awarded an expert witness fee to the prevailing party under the FLSA.  841 F.2d 1567, 1573 (11th Cir. 1988).  The Court concluded that the district court erred in awarding expert witness fees because "although a statute may shift *attorney fees*, the statute does not operate to shift *witness* fees unless the statute refers explicitly to witness fees."  *Id.* at 1575 (emphasis in original).  In reaching its conclusion, the Court examined 29 U.S.C. § 216(b), and noted that it does not specifically "permit[ ] an award of expenses for expert witness fees."  *Id.* at 1574.  The Court further provided "'that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.'"  *Id.* (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987)).  To that extent, "nothing in the legislative history associated with Section 216(b)'s passage suggests

that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A. § 1920." *Id.* at 1575.

Thus, "[t]he general rule in civil litigation in federal courts is that expert witness fees are not taxable as costs beyond the statutory per diem fee, mileage and the subsistence allowance provided for under 28 U.S.C. § 1821." *Nat'l Bancard Corp. v. Visa, U.S.A., Inc.*, 112 F.R.D. 62, 66 (S.D. Fla. 1986). However, in *Visa*, the District Court noted that "[a]n exception to the general rule on taxation of expert witness fees recognized in this circuit is the discretion of the district court to assess such fees when necessitated by 'an unfounded action or defense . . . maintained in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Id.* (quoting *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir. 1971)). In *Visa*, the District Court, within its discretion, concluded that the expert witness testimony "was not presented in 'bad faith' and does not constitute an exception to the general rule." *Id.*

In this case, Plaintiffs argue that Defendants litigated this case in bad faith because Defendants: (1) improperly withheld Defendant Silva's text messages, which were critical in establishing Defendants' liability; (2) failed to disclose information regarding their time records, forcing Plaintiffs to retain a forensic computer expert; (3) refused to seriously engage in settlement discussions; and (4) destroyed evidence, such as paper time sheets and Defendant Silva's text messages. ECF No. [267] at 25–26. Defendants counter, arguing that expert witness fees are not recoverable under the mandatory statutory scheme and, generally, that they did not litigate this case in bad faith. ECF No. [272] at 29–30.

Although this Court already concluded that the discovery and litigation regarding the production of the time records was unnecessarily drawn out by Defendants' failure to timely disclose information requested by Plaintiffs, the Court does not find that Defendants' actions rise to the level

of "bad faith" so as to warrant an application of the exception to the general rule that expert witness fees are not recoverable.  As a result, the Court is unwilling to shift expert witness fees to Defendants in contravention of the express statutory mandates.

Finally, Plaintiffs also argue that they are entitled to $61,637.89 in non-taxable costs under Section 448.08, Florida Statutes.  ECF No. [267] at 26.  Plaintiffs argue that, as prevailing parties under the state law unpaid wages claim, they are entitled to "expenses related to photocopies, long distance calls, postage, Westlaw charges, and expert witness fees."  *Id.*  Defendants argue that state law does not apply, but even if it did "only $0 is reasonable."  ECF No. [272] at 29.

In this case, the Settlement Agreement provides that Plaintiffs are the prevailing parties under their FLSA claim (Count I) and state law breach of contract claims (Count II).  ECF No. [215-2]. Although the Court recognizes that the two claims are intertwined with the factual core such that it is almost impossible to separate the two, the Court notes that Plaintiffs did not recover any damages on their breach of contract claims.  Plaintiffs have already been awarded $24,541.90 for transcript-related costs, printing costs, copy costs, and interpreter costs, ECF Nos. [306] at 3, [313] at 1, and the Court is unwilling to award any expert witness costs beyond what it is permitted under federal law.  As such, the Court concludes that even if state law would apply, pursuant to its discretion under Section 448.08, that Plaintiffs are not entitled to recover expert witness costs.  *See Hodge v. ClosetMaid Corp.*, No. 5:13-CV-62-OC-10PRL, 2014 WL 7251644, at *3 (M.D. Fla. Dec. 18, 2014) (noting that an award of fees under Section 448.08 is discretionary).

## F.  Sanctions Against Defendants Are Not Warranted.

Plaintiffs request that the Court impose sanctions against Defendants and their counsel for "engaging in a pattern of concealment, omission of facts, misrepresentations and dilatory litigation tactics designed to obstruct Plaintiffs' discovery efforts."  ECF No. [267] at 27.  Specifically,

Plaintiffs note that sanctions are warranted because Defendants and their counsel "failed to disclose that most of Defendant Silva's text messages has been destroyed." *Id.* at 28.  Defendants did not provide any counterarguments to Plaintiffs' sanctions request in their Response.  ECF No. [272].

Plaintiffs rely on 28 U.S.C. § 1927 in support of their sanctions request.  ECF No. [267] at 28.  Under Section 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Accordingly, there are three requirements under the statute: (1) the attorney engaged in unreasonable and vexatious conduct, (2) said conduct multiplied the proceedings, and (3) the sanctions imposed are proportional to the attorneys' misconduct.  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  "Bad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim."  *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (citing *Amlong & Amlong, P.A.*, 500 F.3d at 1241).

Section 1927 requires "a causal connection between the objectionable conduct of counsel and multiplication of the proceedings."  *Lawrence v. MS & RE Kesef Corp.*, No. 11-22122-CIV, 2013 WL 12246355, at *3 (S.D. Fla. Feb. 5, 2013), *report and recommendation adopted*, No. 11-22122-CIV, 2013 WL 12246363 (S.D. Fla. Feb. 26, 2013). (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)).  As such, litigation conduct is only sanctionable if it results in proceedings that would not have occurred otherwise.  *Id.* (citing *Peterson*, 124 F.3d at 1396).  Simply put, under Section 1927, only those attorneys that "willfully abuse the judicial process by conduct tantamount to bad faith" may be sanctioned.  *Id.* (quoting *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993)).

Plaintiffs cite *Bernal v. All American Investment Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007), for the proposition that sanctions are warranted under Section 1927 because Defendants and their counsel allegedly "falsified the record," made misrepresentations related to relevant discovery, and concealed relevant information.  ECF No. [267] at 30.  In *Bernal*, the District Court concluded imposed sanctions under Section 1927 when counsel filed an affidavit regarding bribery of a potential witness without inquiring into the matter, which later prompted an array of filings and hearings of the matter.  479 F. Supp. 2d 1332–33.

In this case, the record does not support a finding that sanctions under Section 1927 are appropriate.  The Court addressed the discovery issues at the discovery stage which was appropriate and sufficient.  Although Defendants were not immediately forthcoming about Defendant Silva's text messages, there is not sufficient evidence of bad faith on the record to justify the sanctions requested.  Indeed, this case does not involve the extreme fact pattern presented in *Bernal* because, as the undersigned has already concluded in discovery, the late production of the text message appears to have been an oversight.  ECF No. [139] at 2.  Plaintiffs had the opportunity to depose the relevant witnesses with respect to the text message, and when a second deposition was deemed necessary, Defendants were ordered to bear those costs.  *Id.*  As a result, any prejudice that was cause by Defendants' delayed production of the text messages has already been addressed by the Court; any additional sanctions would not be proportional to the expense caused by Defendants' misconduct, and arguably not available under this Section 1927.

## III.   DEFENDANTS' MOTION FOR SANCTIONS FOR UNREASONABLY AND VEXATIOUSLY MULTIPLYING PROCEEDINGS

Defendants request that sanctions be imposed against Plaintiffs' counsel – the Alderman Law Firm, Jason Alderman, and Kristy Johnson – under Section 1927, or alternatively pursuant to this Court's inherent powers, because "counsel have repeatedly, unreasonably, and vexatiously pursued

meritless claims, misrepresented facts to both the court and Defendants' counsel, and harassed Defendants and their counsel with threats and frivolous, vexatious motions. ECF No. [284] at 5, 19. Defendants request that sanctions be imposed against Plaintiffs' counsel in the form of attorneys' fees and an order that counsel be required to attend continuing legal education courses. *Id.* at 21.

As a preliminary matter and before addressing the merits of Defendants' Motion for Sanctions, Plaintiffs' counsel argues that Defendants' Motion is deficient for several reasons. ECF No. [302] at 9. First, Plaintiffs argue that the request for sanctions under the Court's inherent powers is untimely because the Motion was filed five months after the Settlement Agreement was approved and the case dismissed. *Id.* Plaintiffs' counsel further notes that many of the discovery disputes for which Defendants seek sanctions were addressed in this Court's March 5, 2020 discovery hearing, and as such, any objections not raised within 14 days of this Court's ruling are deemed waived. *Id.* at 10 n.1. In their Reply, Defendants argue that the Motion for Sanctions is timely as to the request under Section 1927 because there is no time limitation for seeking sanctions under that statute. ECF No. [305] at 5. Additionally, Defendants argue that any delay in seeking sanctions is attributable to their preference of "tak[ing] the high road." *Id.*

In *Peer v. Lewis*, the Eleventh Circuit noted that a "motion for sanctions under the court's inherent power [was] timely because [the plaintiff] filed his motion for sanctions before entry of the court's final order." 606 F.3d 1306, 1315 n.10 (11th Cir. 2010) (citing 2 James Wm. Moore et al., *Moore's Federal Practice* § 11.41[6] (3d ed. 2010)). In other words, a request for sanctions related to conduct that occurred prior to the entry of a final judgment and that was known to the opposing party, must be filed prior to the entry of the judgment. *Leon v. M.I. Quality Lawn Maint., Inc.*, No. 10-20506-CIV, 2018 WL 6250529, at *14 (S.D. Fla. Nov. 29, 2018) (concluding that "the [d]efendants' request for the imposition of sanctions after entry of final judgment related to conduct

that occurred during the course of the proceedings, that was known to the [d]efendants prior to entry of the final judgment, is untimely").

The Court agrees that Defendants' Motion for Sanctions pursuant the Court's inherent authority, filed on October 20, 2020, was untimely *vis a vis* the final Order of Dismissal entered on May 28, 2020.  *See* ECF No. [284]; *see also* ECF No. [226].  Indeed, Defendants' Motion for Sanctions relates primarily to conduct that occurred during discovery, which was obviously known to Defendants well prior to dismissal.  Therefore, Defendants' request for sanctions under the Court's inherent powers is untimely to the extent that the sanctions relate to the parties' conduct before the Order of dismissal was entered.

However, the same time limitations do not apply to Defendants' request for sanctions under Section 1927.  *See generally Peer*, 606 F.3d at 1314.  Here, Plaintiffs argue Defendants did not comply with Southern District of Florida Local Rule 7.3 by (1) not filing the request for attorneys' fee within 60 days of the entry of final judgment or in compliance with the Scheduling Order; (2) failing to identify  the amount of fees sought and providing the respective time records; and (3) serving Plaintiffs' counsel with a draft motion and providing a reasonable opportunity to confer.  ECF No. [302] at 11–12.  In response, Defendants argue that they did not have to comply with Local Rule 7.3 because its scope is limited to attorneys' fees and costs sought in relation to a final judgment, which was not the trigger for the fee request.  ECF No. [305] at 7.

Local Rule 7.3 "provides a mechanism to assist parties in resolving attorneys fee and costs disputes by agreement."  S.D. Fla. L.R. 7.3.  Local Rule 7.3(a) states that "[a] motion for an award of attorneys' fees and/or non-taxable expenses and costs arising from the entry of a final judgment or order shall not be filed until a good faith effort to resolve the motion . . . has been completed."

*Id.* at 7.3(a).  The Rule includes several requirements that must be met before a party files a motion for attorneys' fees, including the obligation of counsel to confer before any is filed.

Plaintiffs cite several cases that are instructive on this point.  For example, in *Harris v. Crochet*, the District Court concluded that before filing a motion for sanctions under Rule 11, in which the relief sought was attorneys' fees, it was necessary to "comply with the requirements of Local Rule 7.3 as that rule applies to all attorney's fees motions whether based upon a rule, statute or other grounds, and whether the motion is made before or after the entry of a final judgment."  No. 07-23361-CIV, 2009 WL 10702677, at *3 (S.D. Fla. Jan. 30, 2009).  The District Court explained that compliance with Rule 7.3 was necessary "since it is unclear what, if any, additional fees were incurred with respect to the alleged frivolous portion of the Answer and the Third-Party Complaint." *Id.*  Moreover, in *JTR Enterprises, LLC v. An Unknown Quantity*, a claimant unsuccessfully sought sanctions against the respondent.  No. 11-CV-10074-JLK, 2015 WL 3604143, at *1 (S.D. Fla. June 5, 2015).  After the claimant's motion for sanctions was dismissed, the respondent sought sanctions under Section 1927 against the claimant for having to defend a legally and factually unsupported sanctions claim.  *Id.*  The District Court concluded that compliance with Rule 7.3 was necessary for the claim under Section 1927.  *Id.*

Notably, Rule 7.3(b) requires that "a draft motion compliant with Local Rule 7.3(a)(1)–(8) must be served but not filed at least thirty (30) days prior to the deadline for filing any motion for attorneys' fees and/or costs that is governed by this Local Rule."  In *Lawrence*, after a final judgment was entered in the defendant's favor, defendant filed a motion for attorneys' fees pursuant to the District Court's inherent powers and Section 1927.  2013 WL 12246355, at *1.  The District Court concluded that the "[d]efendant wholly failed to comply with the requirements of the Local Rule [7.3] and the [m]otion may be denied on that ground alone" because the defendant did not serve a

draft motion 30 days prior to filing, rather he merely notified the plaintiff about the motion and filed it the following day. *Id.* at *8; *see also Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07-80185-CIV, 2008 WL 360591, at *2 (S.D. Fla. Feb. 8, 2008) (denying sanctions sought in conjunction with a motion to compel because the request for sanctions "was not accompanied by an affidavit or any exhibit explaining what monies should be awarded").

Defendants did not comply with the requirements of Rule 7.3, thereby warranting denial of their Motion for Sanctions. First, Defendants did not comply with the 60-day requirement of Rule 7.3 because the Order of dismissal in this case was entered on May 28, 2020, ECF No. [226], and the instant motion was filed on October 20, 2020, ECF No. [284]. Defendants argument that the final judgment was not the linchpin for the request is entirely unpersuasive as it begs the question what conduct, much less order of the Court, would have triggered the 60-day requirement. Indeed, as has been the pattern in most of this case, the throw-in-the-kitchen-sink approach now to a sanctions request, is also untimely. Second, Defendants' Motion for Sanctions is not verified, does not identify the exact amount of fees sought, does not include any description of the hours expended, and does not identify the qualification and experience of each timekeeper for which fees are sought as required by Rule 7.3. This is also fatal to their claim. Finally, it appears that a draft motion was not served on Plaintiffs thirty days prior to filing the instant motion. A phone call just four days prior to the filing of the Motion is entirely insufficient. *See* ECF No. [302] at 12. As a result, Defendants' failure to comply with Rule 7.3 altogether requires denial of the Motion for Sanctions.[11]

---

[11] Plaintiffs argue that Defendants' Motion must be denied because Defendants waived all claims to attorneys' fees by entering into the Settlement Agreement. ECF No. [302] at 12. In response, Defendants argue that they only seek fees incurred for preparing and litigating the Motion for Sanctions. ECF No. [305] at 8. Additionally, Defendants argue that they did not waive the right to seek fees arising from Plaintiffs' misconduct. *Id.* The Settlement Agreement specifically provides: "Defendants waive any and all claims for entitlement to any attorneys' fees or costs against Plaintiffs in this Action, but Defendants do not waive the right to raise any arguments in response to Plaintiffs'

However, given the contentious nature of nearly every issue in this case and to address what will likely be a round of objections from the parties to the Report and Recommendation, the Court finds it prudent to address the substance of this Motion.

Defendants first argue that the Court should impose sanctions against Plaintiffs' counsel because they filed and litigated Plaintiff Maxean's "non-existent overtime claim" despite representing to Defendants' counsel and the Court that they would dismiss Plaintiff Maxean's claims. *Id.* at 6. Defendants rely on Plaintiff Maxean's November 15, 2019 sworn interrogatory testimony, in which he stated that he did not recall working overtime for Defendant BAGS during the limitation period. *Id.*; *see also* ECF No. [89-12] at 4. Defendants further rely on the initial findings of Plaintiffs' expert, Keith Mendes, who based on the Raw Data Report available at the time, concluded that Plaintiff Maxean did not work any overtime. ECF No. [284] at 7. Additionally, Defendants argue that in his supplemental expert report, Mr. Mendes indicated that Plaintiff Maxean was not owed any overtime wages. *Id.* at 8.

Plaintiffs respond, arguing that Defendants' argument regarding Plaintiff Maxean is without merit. ECF No. [302] at 15. Plaintiffs note their expert's initial determination regarding Plaintiff Maxeans's claims was based on Defendants' deficient records, which this Court later ordered

---

petition for award of attorneys' fees and costs." ECF No. [220-2] ¶ 2. Defendants argue that they only waived the right to seek prevailing party fee for the Broward County Living Wage Ordinance Claim. ECF No. [305] at 8.

The Court concludes that the language of the Settlement Agreement precludes Defendants from seeking attorneys' fees in connection with the claims asserted. For example, although Defendants prevailed on the BCLWO claim, they waived all claims to attorneys' fees in connection with said claim. However, Defendants did not waive any claims to attorneys' fees stemming from motions for sanctions, or the like. As a result, the Court finds that Defendants are not precluded from seeking attorneys' fees through the instant motion by virtue of the Settlement Agreement to the extent they are seeking fees that are unrelated to the claims.

Defendants to supplement. *Id.* In fact, Plaintiffs' expert's supplemental report indicates that Plaintiff Maxean was owed $7.34 in unpaid overtime and $3,084.71 in unpaid wages, contrary to Defendants' assertion. *Id.*; ECF No. [194-9] at 7.

Defendants' argument regarding Plaintiff Maxean is bellied by the record. Indeed, the record reflects that Plaintiff Maxean had a valid claim for unpaid wages. *See* ECF No. [194-9] at 7. Although his claim for unpaid overtime may have minimal, Plaintiff Maxean ultimately recovered a total of $2,052.10 through the Settlement Agreement. ECF No. [215-2] at 2. Indeed, the Settlement Agreement classifies the FLSA damages as "unpaid wages" and does not accord any Plaintiff damages for unpaid overtime. Therefore, because Plaintiff Maxean is a prevailing party in this case, sanctions are not appropriate given Plaintiffs' failure to dismiss any unpaid overtime claims.

Second, Defendants argue that the Court should impose sanctions because Plaintiffs' counsel repeatedly made misrepresentations to Defendants and the Court. ECF No. [284] at 8. Specifically, Defendants argue that Plaintiffs' counsel: (1) on at least two occasions, falsely indicated that Defendants had not responded to the conferral requests when in fact Defendants had indicated that they had no objections, *id.* at 8–9; (2) accused Defendants' counsel of making multiple misrepresentations via email, *id.* at 10; (3) misrepresented defense counsel's statements regarding the existence of Defendant Silva's text messages, *Id.* at 10–11; (4) misrepresented defense counsel's position regarding the document retention policy as it related to Defendant Silva's text messages, *id.* at 11; (5) misrepresented Defendants' search efforts regarding missing payroll information for Plaintiff Hilaire, *id.* at 12; (6) misrepresented that Plaintiffs produced a text message wherein Defendant Silva admits to verifying the time worked by employees because the message was produced by Defendants and it states no such thing, *id.* at 13; (7) misrepresented the timing of the disclosure of Defendants' Silva's text message, which resulted in another deposition, *id.* at 13–14;

(8) made misrepresentations in its billing entries, for example, requesting 8 hours for a 6.7-hour deposition, *id.* at 14; and (9) caused Defendants to incur additional time responding to their multiple attempts to allow non-parties to participate in mediation, *id.* at 15.

In response, Plaintiffs' counsel argues that any alleged misrepresentations regarding conferral were the byproduct of misunderstandings that were promptly corrected via amended filings. ECF No. [302] at 16–17. Plaintiffs' counsel further argues that Defendants improperly seek to relitigate alleged misrepresentations regarding discovery that have already been addressed by the Court, for example, the disclosure of Defendant Silva's text message and Defendants' document retention policy. *Id.* at 19–21. Moreover, Plaintiffs' counsel argues that Defendants' issues with the billing entries do not have merit because Defendants do not take into account for deposition preparation time, and notwithstanding, Plaintiffs voluntarily reduced the time associated with those entries following conferral with Defendants. *Id.* at 22. Finally, Plaintiffs' counsel argues that any alleged multiplication of costs as a result of counsel's request to have its own counsel present at the mediation on attorneys' fees and costs is meritless because upon receiving Defendants' objection, the request was abandoned. *Id.* at 22–23.

The Court is unpersuaded by Defendants' argument that Plaintiffs counsel's litigation conduct warrants sanctions. As previously set forth, the precursor to sanctions under Section 1927, is a finding of bad faith. *See Amlong & Amlong, P.A.*, 500 F.3d at 1241–42 ("It is also, by now, clear that negligent conduct, standing alone, will not support a finding of bad faith under § 1927— that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney."). To that extent, the Eleventh Circuit has made clear that in order to constitute bad faith, an "attorney's conduct must be particularly egregious to warrant

the imposition of sanctions—the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Id.* at 1242 (emphasis in original).

The record in this case does not support a finding of bad faith because counsel's conduct does not meet this high standard. As has been extensively set forth above, it appears to the undersigned that this matter was needlessly contentious and the level of distrust between counsel created unnecessary litigation. However, this cannot be attributed entirely to Plaintiffs' counsel. Instead, the lack of collegiality and civility that plagued Plaintiffs' and Defendants' counsel alike marked the tone of this case and fueled the unnecessarily litigious stance taken by both sides. Thus, the Court refuses to impose sanctions under Section 1927 on Plaintiffs' counsel.

Finally, Defendants argue that sanctions should be imposed against Plaintiffs' counsel because "Plaintiffs' counsel have belittled, harassed, bullied, and threatened Defendants' counsel. ECF No. [284] at 20. Defendants list what they characterize as counsel's pattern of "incessant threats" in support of their request. *Id.* at 19. Specifically, Defendants note that Plaintiffs' counsel, in most instances Mr. Alderman, threatened to seek sanctions seven times and that Mr. Alderman made unprofessional remarks, including:

> (1) "The documents you sent us weren't exhibits. None were premarked. As was the case with the wrong formatting, misspellings in your draft, they were [sic] non compliant. I'm not going through your exhibits until they are premarked. Ours are and have been ready to go (premarked). Advise when you are complying and sending us your exhibits. We'll send you ours now so you can see how it's done." ECF No. [272-5] at 59.

> (2) "We're done with your misrepresentations, with your withholding of documents, and your inability to comply with basic trial 101 requirements. Who's supervising you?" *Id.* at 90.

> (3) "[I]t's important for your client to hear my presentation. We will methodically lay out how Defendants thought they could roll over a business trial law firm (not knowing we are a business trial law firm), added lawyers, threatened plaintiffs and plaintiffs counsel, only to

botch discovery, botch the magistrate hearings . . . botch the rehearing, cave on the eve of trial, and botch an understanding of Florida law on multipliers."  ECF No. [272-2] at 2.

Plaintiffs respond, arguing an indication of an intent to seek sanctions is not a threat warranting sanctions.  ECF No. [302] at 23.  Instead, Plaintiffs' counsel argues, the pronouncement of the intent to seek sanctions constitutes a conferral effort, which afforded Defendants the opportunity to correct any deficiencies.  *Id.*

As previously noted, under Section 1927, three elements must be satisfied: (1) the attorney engaged in unreasonable and vexatious conduct, (2) said conduct multiplied the proceedings, and (3) the sanctions imposed are proportional to the attorneys' misconduct.  *Amlong & Amlong, P.A.*, 500 F.3d at 1239.  For example, in *Doria v. Class Action Services, LLC*, the court considered whether Section 1927 sanctions were appropriate were the plaintiffs filed a meritless RICO claim, the parties "inundated the [c]ourt with myriad documents, comprised of hundreds of pages, primarily relating to discovery issues," the plaintiffs were "aggressive" in filing what they called emergency motions for sanctions, and the parties routinely sought judicial involvement through the filing of excessive motions regarding issues that could have easily been addressed amongst themselves.  261 F.R.D. 678, 681–82 (S.D. Fla. 2009).  The court noted that the plaintiffs' counsel gave it "pause, as they certainly did not exhibit the collegiality or professionalism expected of attorneys in this District." *Id.* at 686.  Moreover, the court stated that it does not "condone [the p]laintiffs' counsels' pugnacious, self-serving behavior, and their zealousness and negligence was moving along the spectrum toward unreasonableness and vexatiousness."  *Id.*  However, the court ultimately concluded that sanctions under Section 1927 were not appropriate because counsel's behavior was not so egregious so as to amount to bad faith.  *Id.*

Here, as in *Doria*, the Court finds that sanctions are not warranted. As set forth above, although the level of distrust among counsel in this case was palpable, this lack of collegiality does not rise to a level of bad faith. *See Smith v. Grand Bank & Tr. of Fla.*, No. 04-80343, 2005 WL 6106148, at *9 (S.D. Fla. Apr. 28, 2005) (noting that sanctions under Section 1927 are only appropriate when attorneys willfully abuse the judicial process through their bad faith conduct). Now, to be sure, threatening sanctions at every turn, belittling opposing counsel, and the general tone of the emails provided are far from the conduct that is expected from reasonable counsel. However, it does not amount to bad faith as the law defines such conduct.

## IV.    CONCLUSION

For the forgoing reasons, it is hereby **RECOMMENDED** that Plaintiffs' Motion for Attorneys' Fees and Costs, ECF No. [267], be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned recommends that Plaintiffs be awarded a total of $140,683.08, but no additional costs. The undersigned further recommends that Plaintiffs' request that sanctions be imposed against Defendants be **DENIED**. Finally, undersigned recommends that Defendants' Motion for Sanctions, ECF No. [284], should also be **DENIED**.

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Any request for an extension of this deadline must be made within **FIVE (5)** calendar days from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28

U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 4, 2021.

_____

JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE